508

## Michael WRIGHT v. Leon STOREY

88-309                                                 769 S.W.2d 16

Supreme Court of Arkansas
Opinion delivered May 1, 1989
[Supplemental Opinion on Denial of Rehearing
July 3, 1989.*]

*David H. White*; and *David Love*, Hot Springs City Att'y,
for appellant.

*Q. Byrum Hurst, Jr.,* for appellee.

DAVID NEWBERN, Justice. This is an illegal exaction suit
brought as a class action by the appellees, who are Garland
County taxpayers, against the appellants, who are the city
manager, mayor, and members of the City of Hot Springs Board
of Directors. Pursuant to Ark. Const. amend. 31, the residents of
Hot Springs approved by referendum vote a property tax levy of
up to one mill to provide a fund for police pensions and up to one
mill for firefighter pensions. That took place in 1941, and one full
mill was certified and taxed for those purposes until the passage of
Ark. Const. amend. 59 in 1980, at which point the taxes were

---

*Hickman, Hays, and Glaze, JJ., dissent.

rolled back to .4 mill for each fund. The reduced amount was collected until 1986 and 1987 when the city board certified one mill although no further election had occurred. The court held the city had illegally collected the taxes because no further election had occurred and there had been no compliance with the part of amend. 59 which is now Ark. Const. art. 16, § 14. The city argues amend. 31 permitted the one mill levy, that the people had approved it by election, and that amend. 59 did not affect amend. 31. We conclude there was no error because the court was correct in holding that there must be compliance with amend. 59.

In *Clark* v. *Union Pacific R.R.*, 294 Ark. 586, 745 S.W.2d 600 (1988), we offered explanation of amend. 59. We found it to be the purpose of the amendment to equalize tax rates on personal and real property. The idea is to reduce personal property taxes simultaneously with the raising of real property taxes or to hold personal property taxes static until real property tax rates equal them. As Justice Glaze noted in his concurring opinion, the revenues from personal property were to be computed so as not to exceed collections in excess of the "base year." This was the so-called "rollback" provision.

Assuming the rollback from one mill to .4 mill was done to comply with amend. 59, the city was thereafter collecting the same revenues it had collected at one mill on the taxes in question. To allow the city then to return to the old rate (clearly in excess of 10% over the base year) on the newly increased appraised value of the property would violate amend. 59, even though it might have seemed permitted, literally, by amend. 31. The later amendment prevails in the event of a conflict. *Chessir* v. *Copeland*, 182 Ark. 425, 32 S.W.2d 301 (1930); *Lybrand* v.*Wafford*, 174 Ark. 298, 296 S.W. 729 (1927).

Moreover, the court's finding that the city had not demonstrated compliance with art. 16, § 14, was appropriate. While that section is otherwise confusing, it clearly states:

> The adjustment or rollback of tax rates or millage for the "base year" as hereinafter defined shall be designed to assure that each taxing unit will receive an amount of tax revenue from each tax source no greater than ten percent (10%) above the revenues received during the previous year from each such tax source, adjusted for any lawful tax

or millage rate increase or reduction imposed in the manner provided by law . . . .

The court's order required the city to refund taxes collected in excess of what it would have collected under the .4 mill rate plus ten percent per year increase.

We do not consider whether an election was required to permit the ten percent increase, as the taxpayers have not cross-appealed on that point.

Affirmed.

HICKMAN, J., concurs.

PURTLE and GLAZE, JJ., dissent.

DARRELL HICKMAN, Justice, concurring. Another victim of godzilla. *See Clark v. Union Pacific Railroad Co.,* 294 Ark. 586, 745 S.W.2d 600 (1987) (Hickman J., dissenting).

TOM GLAZE, Justice, dissenting. In *Clark v. Union Pac. R.R.,* 294 Ark. 586, 745 S.W.2d 600 (1988), we said that Amendment 59 provides that the amount of revenue derived from personal property cannot be increased until the rates for real and personal property equalize. There, the parties provided extensive testimony, findings and conclusions that clearly reflected that the real and personal property rates in School District No. 9 in Cross County had not been equalized and that to apply a new millage to personal property in the district would only perpetuate that unequal discrimination which was contrary to Amendment 59.

Here, the parties have presented virtually no proof bearing on the change in the millage rates and its effect on the collection of revenues from the real and personal property in issue. Unlike in *Clark*, the parties here offered no testimony or findings to the trial court, so there is virtually no record to review on appeal. The court's only reference to millage was that a one mill levy on real and personal property was assessed for the benefit of the police and fire pension funds and that the one mill was "rolled back to .4 per fund per Amendment 59" in 1982 and collections for that year totalled $135,032.00. No mention is made of how the millage was rolled back or the effect it had on the respective collections from the real and personal property assessed and located in the City of Hot Springs. In sum, I am unable to discern what

differences existed between real and personal property rates, assessments and collections in base year 1982 and subsequent years. As a consequence, I cannot determine if any prior discrimination in personal and real property rates has been equalized since the roll back took place in 1981. Clearly, if equalization has been achieved, the appellants' action in returning the millage to one mill from .4 mill is not wrong merely because it increased revenue collections in excess of 10% over the base year.

Because this case fails to present an adequate record to decide the issue reached and decided by the trial court, I would reverse and remand this cause rather than postulate the information necessary to determine whether the appellants' action in this cause violated Amendment 59.

PURTLE, J., joins this dissent.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
JULY 3, 1989

772 S.W.2d 598

*David H. White*, for appellant.

*Q. Byrum Hurst, Jr.*, for appellee.

DAVID NEWBERN, Justice. The appellants seek rehearing of our decision rendered May 1, 1989, asserting that the language in

our opinion misinterprets the provisions of amend. 59 when read as a whole. They also suggest that the language in our decision inadvertently conflicts with our opinion in *Clark* v. *Union Pacific R.R.*, 294 Ark. 586, 745 S.W.2d 600 (1988). The Assessment Coordination Division of the Public Service Commission joined as *amicus curiae* supporting the appellants in these assertions. The petition offers, in great detail, what they submit to be the proper interpretation "overall" of the provisions of amend. 59. The supplemental dissenting opinion on denial of rehearing agrees that our opinion in this case reinstates the same error we corrected by the substituted opinion in the *Clark* case.

The dissent quotes this sentence from the body of our opinion to support the conclusion that the error corrected by the substituted opinion in the *Clark* case has been reinstated: "To allow the city then to return to the old rate (clearly in excess of 10% over the base year) on the newly increased appraised value of the property would violate amendment 59, even though it might have seemed permitted, literally, by amendment 31."

While that sentence, read in isolation from the remainder of the opinion might be subject to that interpretation, the opinion as a whole does not support such a conclusion. The language we corrected in the *Clark* case had suggested that *real estate taxes* could not be increased more than ten percent after the base year. That conclusion is not supported by the majority decision in this case. As we stated in the paragraph above the quoted sentence, the purpose of the amendment is to equalize the tax rates on real and personal property and this could be accomplished either by holding personal property taxes static and raising real property taxes until equalization occurred or by the rollback procedure. There is no suggestion that the same goal could not be achieved by both rolling back personal property rates and raising real property rates to close the gap.

That which is prohibited by amend. 59, by the court's opinion in this case, and by the court's opinion in the *Clark* case is any increase in the millage rate on the newly appraised value of *personal* property prior to equalization. To avoid the possibility of future misinterpretation, the language of the sentence quoted above is modified to read as follows: To allow the city then to

return to the old rate (clearly in excess of 10 % over the base year) on the newly increased appraised value of personal property would violate amend. 59, even though it might seem permitted, literally, by amend. 31.

■ The dissenting opinion also concludes, as did the dissenting opinion accompanying our decision in this case, that the record was insufficient to support the chancellor's finding that amend. 59 had not been followed. The record was sufficient to show, and none of the facts were even contested, that the Hot Springs city board raised the millage from .4 to 1 mill after the rollback. If it is the suggestion of the dissenting opinion that the record does not demonstrate that equalization had not occurred at the time the increase was ordered, such a suggestion is unacceptable. If equalization had been achieved, it was the duty of the appellants to present a record demonstrating it. Surely the appellants would have argued equalization had occurred were there any possibility that it had. No such argument has ever been made.

■ Another good reason for denying rehearing is that the appellants failed to make the arguments presented in their rehearing petition suggesting the possible interpretation of amend. 59 at either the trial level or in the orginal briefs arguing this case before this court. We have repeatedly held that we will not address arguments which the appellant did not raise in the proceedings below. *Reed* v. *Alcoholic Beverage Control Div.*, 295 Ark. 9, 746 S.W.2d 368 (1988); *Arkansas Cemetery Board* v. *Memorial Properties*, 272 Ark. 172, 616 S.W.2d 713 (1981).

Rehearing denied.

HICKMAN, HAYS and GLAZE, JJ., would grant this rehearing.

TOM GLAZE, Justice, dissenting. Appellants petition for rehearing and request we reverse our decision rendered on May 1, 1989. The court badly bungled this case, and we compound our error by failing to grant the appellants' petition. I quickly add that I believe the respective parties' failure to present an adequate record in this case did much to cause the erroneous decision reached by this court. *See Wright* v. *Storey*, 298 Ark. 508, 510,

769 S.W.2d 16, 18 (1989) (Glaze, J., dissenting).

The majority court's opinion says, "To allow the city then to return to the old rate (*clearly in excess of 10% over the base year*) on the newly increased appraised value of the property would violate amendment 59, even though it might have seemed permitted, literally, by amendment 31." (Emphasis added.) This language reflects the same blunder we made (and corrected) in *Clark* v. *Union Pac. R.R.*, 294 Ark. 586, 745 S.W.2d 600 (1988). In *Clark*, we originally opined that real estate taxes could not be increased more than ten percent after the base year — the same principle noted above and followed by the majority in this cause; however, in response to a rehearing petition, we promptly corrected our error in *Clark* by deleting such limiting language. Thus, by the majority court's opinion in this case, the court reinstates the same error we corrected in *Clark*.

After reviewing their petition and contemporaneous brief, I glean the appellants have a better grasp of the constitutional issues in this case and now realize how poorly developed this cause was when it was tried below. Without an adequate record before it, this court chose to shoot in the dark, hoping to resolve the serious constitutional issues presented in this appeal. In doing so, it not only bagged Justice Hickman's "Godzilla," *Clark*, 294 Ark. at 593, 745 S.W.2d at 604 (Hickman, J., dissenting), it also created a monster of its own. We could alleviate this concern (which will continue to loom in the future) by granting the appellants' rehearing petition and reversing and dismissing this case without prejudice.

In conclusion, I would note that, in responding to my dissent, the majority attempts to clarify its earlier opinion while, at the same time, saying the opinion is correct. Quite candidly, I am uncertain as to how the court's clarification avoids the conflict I, the appellants and the Assessment Coordination Division perceive exists in this case and our prior decision in *Clark*. From my reading of the majority's original and supplemental opinions, I am further convinced this case was not adequately developed or argued below. If we reversed this case, perhaps the parties would eventually return it to us with a more understandable format and record. As it now stands, the majority's decision only adds to the

confusion that gradually envelopes Amendment 59.

HICKMAN and HAYS join in this dissent.