Larry CRANE, Director of the Arkansas Assessment
Coordination Division, et al. *v.* NEWARK SCHOOL
DISTRICT NO. 33 of Independence County

89-354                                        799 S.W.2d 536

Supreme Court of Arkansas
Opinion delivered November 19, 1990
[Rehearing denied December 21, 1990.]

*Steve Clark*, Att'y Gen., by: *Frank J. Wills III*, Asst. Att'y
Gen., for appellants.

*Rose Law Firm, A Professional Association*, by: *David L.
Williams, M. Jane Dickey*, and *B. Michael Bennett*, for appellee.

DAVID NEWBERN, Justice. This is a property tax case
requiring interpretation of Ark. Const. art. 16, § 14, and
implementing legislation. The action was brought by the appel-
lee, Newark School District No. 33 of Independence County
(Newark), against appellant Larry Crane, Director of the As-
sessment Coordination Division (ACD), which is a division of the
Arkansas Public Service Commission. Also named as defendants
were appellants Margaret Boothby and George Kimmer, County
Clerk and Tax Collector, respectively, of Independence County.
Newark claimed that Boothby and Kimmer, pursuant to the
directions of ACD, had assessed and collected personal property
taxes, on other than property belonging to utilities and common
carriers, in amounts improperly low in its district in 1988. The
chancellor found the formula used by Boothby and Kimmer at the
instance of ACD was contrary to applicable statutes and to the
Constitution. She enjoined the appellants from using the ACD
formula and ordered a 1988 assessment on the basis of a formula

required by the statutes implementing Amendment 59. The decision was correct.

Massive reassessment of property occurred in Arkansas pursuant to our decision in *Arkansas Public Service Comm.* v. *Pulaski County Bd. of Equalization,* 266 Ark. 64, 582 S.W.2d 942 (1979), which required real and personal property to be taxed on an equal basis. Amendment 59 was a response to that decision. The amendment was intended to effect equalization on a gradual basis by holding the revenue from taxation of personal property relatively static as taxes on real estate increased. *Clark* v. *Union Pacific R.R.,* 294 Ark. 586, 745 S.W.2d 600 (1988). *See also Wright* v. *Storey,* 298 Ark. 508, 769 S.W.2d 16 (1989). Act 848 of 1981, codified as Ark. Code Ann. §§ 26-26-401 through 26-26-409 (1987), was passed to implement Amendment 59.

The portion of Amendment 59 now codified as Ark. Const. art. 16, § 14, sets up a "base year" defined as "the year in which a county completes reassessment and equalization of taxable real and personal property . . . and extends the rolled back millage rates for the first time . . . for collection in the following year." Newark's reassessment occurred in 1983. The assessment on personalty in 1982 yielded $262,354.00. Based upon assessed personalty of $5,830,080, the tax rate was thus 45 mills. ($262,354 divided by $5,830,080 equals .045.) The chancellor found as a matter of fact that the 45 mill rate had been approved by the electorate.

The statutory scheme of implementation of the amendment is that the revenue figure of the base year will remain "frozen," § 26-26-405(a), as the assessment base increases and the tax rate decreases. There is support for the statutory freeze of revenues in the amendment. For example, in a proviso which could easily be interpreted as applying to the entire amendment there is the following:

> Provided, however, that the amount of revenues derived from taxable personal property assessed in the taxing unit for the base year, other than personal property taxes to be paid by public utilities and regulated carriers . . . shall be computed at the millage necessary to produce the same dollar amount of revenues derived during the

current year in which the base year adjustment or rollback of millage is computed, and the millage necessary to produce the same dollar amount of revenues received from personal property taxes received by the taxing unit, for the base year shall be reduced annually as the assessed value of taxable personal property increases until the amount of revenues received from personal property taxes, computed on the basis of the current year millage rates will produce an amount of revenues from taxable personal property equal to or greater than received during the base year, and thereafter the millage rates for computing personal property taxes shall be the millage rates levied for the current year. [Ark. Const. art. 16, § 14.]

To accomplish this freezing of revenues and reduction in rate of taxation on personalty, the general assembly created a formula for annual computation of the reduced interim tax rate until equalization. To use the formula, the following data, specified in the statute, are required:

1. Base year revenues _____

2. Previous year assessment base _____

3. New assessment base _____

4. Current millage by tax source _____

The formula provided in the statute is as follows:

Previous Assessment *divided by* New Assessment = Growth Factor

Base       Base

Growth Factor *times* Current Millage = Interim Millage (rounded)

Interim Millage *times* New Assessment = Revenue

Base

For example, Newark's new assessment base for 1983 was $6,775,115. Its previous (base year) assessment base was $5,830,080. The latter figure divided by the former yields a growth factor of .8606. The current millage, .045, multiplied by the growth factor .8606 yields an interim millage of .0389 or 38.9 mills. The new assessment base, $6,775,115, multiplied by the interim millage, .0389, yields revenue of $263,551. That figure is

no more than 10% above the previous year revenues, thus the provisions of the statute are satisfied. *See Hot Springs School Dist. No. 6* v. *Wells*, 281 Ark. 303, 663 S.W.2d 733 (1984).

We must note here the discrepancy between item 2. in the statutory data list, "Previous year assessment base," and the term used in the formula, "Previous assessment base." The chancellor concluded that the term used in the formula referred to the base year assessment base rather than that which was obtained in the year previous to the year under consideration. We do not know the basis of her choice, but it makes no difference, significant for our purposes, in the result she reached.

Both the constitutional amendment and the statute contemplate that equalization of rates of taxation on realty and personalty will occur because there will be an increase in personal property in any taxing unit from year to year but the amount of realty will remain the same. To hold the amount of revenue received from taxation of personal property at the same level, or within 10% of it, in spite of personal property tax base increases, the rate of taxation is to be decreased as in the example given. At the point when the rate of taxation on personalty is reduced to that on real property, equalization will have been achieved.

While the assumption that the amount of assessable real estate in a taxing unit will remain the same is acceptable, unfortunately the assumption that the amount of personalty in the unit will increase is not acceptable. It has been demonstrated in Newark that the amount of personalty, and thus the assessable tax base on that species of property, may be reduced in any particular year. Newark's personal property assessable tax base decreased in 1984, 1985, and 1986. If the formula set out in the statute had been followed, the rate of taxation (the millage figure) would have increased.

For example, in 1987, Newark's assessable base was $5,790,600. In the base year it was $5,830,080. Using the formula and dividing the former figure by the latter, the growth factor would have been 1.01. The growth factor times the "current millage," defined by § 26-26-405(a) as "the millage that was used in each taxing unit to derive the base-year revenues for personal property," in this case .045 yields an interim millage of .0455 or 45.5 mills. That is a figure which is in excess of the base

year millage. It clearly was not contemplated by the amendment or the statute that the millage would go up to any level, much less one not approved by the voters.

The Independence County authorities handled the problem during the years of decreasing assessment base simply by skipping the second part of the formula and using the rolled back rate of 38.9 mills during the period of declining personalty tax base. They thus apparently received less revenue in those years.

Authorities in the Assessment Coordination Division attempted to solve the problem in 1986 by changing the data to be used for the calculations from those provided in the statute. Instead of "Base year revenues" they instructed the clerks and collectors to use "previous year." In Newark's case, that meant that when the personalty tax base rose, as it did in 1987 to $6,902,315 from the 1986 figure of $5,790,600, Newark could receive no more than 10 % in excess of the $256,520 generated in the previous year, 1986. In addition, the Assessment Coordination Division instructed the county authorities to use the personalty assessment base from the "previous year" instead of the base year as item No. 2 in the data to be applied in the formula. These variations caused Newark's revenue figure to drop substantially below that which it would have received if the formula had not been changed, and they caused Newark to bring this lawsuit challenging the practice of the Independence County Clerk and Collector which they had been instructed by the Assessment Coordination Division to follow. Newark contends it is entitled to a minimum of the "frozen" base year revenue figure of $262,354.

The Assessment Coordination Division contends it had the authority to vary the statutory formula because of the provision of § 26-26-409 giving it

> authority and responsibility with respect to the implementation of . . . Amendment 59 and the provisions of . . . laws enacted to carry out the purpose and intent of the amendment . . . [and] to adopt appropriate rules, regulations, and guidelines to assure that the intent and purpose of the amendment and the laws . . . are effectively and efficiently carried out during the transitional period.

We agree with the chancellor's conclusion that no authority was

given to vary the specific terms of the statute or to adopt a formula directly at odds with that contained in § 26-26-405.

The Assessment Coordination Division argues that if we fail to adopt its "interpretation" of the statutes we will make "Ark. Code Ann. § 6-20-302(4)(iii)" meaningless. The reference is apparently to § 6-20-302(4)(B)(iii) which provides:

> Personal Property. The actual assessment for the previous calendar year shall be used for school districts located in counties that have not been reassessed. For school districts located in counties that have been reassessed, the charged assessment used shall be the actual assessment for the calendar year prior to the base year multiplied by the ratio of the taxes due to be collected in the current or latest year to the taxes due to be collected in the base year; . . . .

No explanation is provided as to how this language, which is part of the School Finance Act, an entirely separate piece of legislation, would be made meaningless if Amendment 59 and its implementing statutes are followed. We decline to speculate on the manner in which the two programs may be related. In any event, we would not hold that the language supersedes a constitutional amendment.

We agree with the chancellor's declaration that the rate to be applied to Newark for 1988 is 38.1. It is figured as follows:

| | |
|---|---|
| Base year revenue | $262,354 |
| Previous year base | $5,830,080 |
| New base | $6,902,315 |
| Current millage | .045 |

The previous year base (base year), $5,830,080, divided by the new base, $6,902,315, yields a growth factor of .8446. The current millage, .045, multiplied by the growth factor, .8446, yields an interim (rounded) millage of 38.1. The interim millage applied to the new base yields $262,978 which is within the 10% above base year limit.

While we approve the chancellor's conclusions about the case before us, we must note that we are not dealing with an

increase in millage above the base year figure of .045. Following the statutory formula could result, as demonstrated above, in a rate of taxation which is in excess of that of the base year and in excess of any approved by the electorate. That case was not before the chancellor, and consequently it is not before us now. The general assembly should be aware that the formula may be fatally flawed and completely unworkable if property values fall or if the amount of personalty in a taxing unit decreases to the extent that following the formula causes an increase in the millage to a level in excess of that of the base year or a level not approved by the voters. We find no provisions which would govern such an instance, and we urge the general assembly to consider the problem.

Affirmed.