Mr. Dale Langston Director Assessment Coordination Division Arkansas Public Service Commission 1614 West Third Little Rock, Arkansas 72201
Dear Mr. Langston:
This is in response to your request for an opinion on whether A.C.A. §§26-26-401 to -409 (Repl. 1992), which provides for the adjustment of ad valorem tax rates in certain circumstances, applies in the case of a countywide property reassessment that is not part of a statewide property reappraisal.
With respect to the event that triggers a tax rate adjustment, A.C.A. §26-26-402(a)(1) provides:
 Whenever a countywide reappraisal or reassessment of property subject to ad valorem taxes . . . shall result in an increase in the aggregate value of taxable real and personal property in any taxing unit in this state of ten percent (10%) or more over the previous year, the rate of . . . taxes levied . . . shall . . . be adjusted or rolled back. . . .
The same section makes extensive use of the term "base year" in specifying how the amount of any such adjustment is to be determined. See
A.C.A. § 26-26-402(a)(2) and (3). The term is defined by the statute in relevant part as follows:
 As used in [A.C.A. § 26-26-402], the term "base year" shall mean the year in which a county completes reassessment and equalization of taxable real and personal property as a part of a statewide reappraisal program. . . .
A.C.A. § 26-26-402(a)(5) (emphasis added).
Because there can be no "base year," under the express terms of the definition, unless the countywide reassessment is part of a statewide reappraisal, and because the amount of the rate adjustment cannot be determined without reference to a base year, one might conclude that an adjustment cannot be accomplished under the statutes unless the countywide reassessment is part of a statewide reappraisal. Your request states that some officials charged with administering the statutes hold this view.
The statutes discussed herein were enacted as Act 848 of 1981, which was legislation implementing Amendment 59 to the Constitution of Arkansas. Act 848, § 11; Crane v. Newark School Dist. No. 33, 303 Ark. 650,799 S.W.2d 536 (1990). Amendment 59 itself, codified in relevant part at Ark. Const. art. 16, § 14, contains the same ambiguity found in A.C.A. §26-26-402 and described above, and provides in relevant part:
 Whenever a countywide reappraisal or reassessment of property . . . shall result in an increase in the aggregate value of taxable . . . property in any taxing unit . . . of ten percent (10%) or more over the previous year the rate of . . . taxes . . . shall . . . be adjusted or rolled back. . . . The adjustment or rollback of tax rates or millage for the "base year' as hereinafter defined shall be designed to assure that each taxing unit will receive an amount of tax revenue from each source no greater than ten percent (10%) above the revenues received during the previous year from each such tax source. . . .
* * *
 As used herein, the term "base year" shall mean the year in which a county completes reassessment and equalization of taxable real and property as a part of a statewide reappraisal program. . . .
Ark. Const. art. 16, § 14(a).
In my opinion, ad valorem tax rates in a county that completes a countywide reassessment that otherwise qualifies under applicable law (see A.C.A. §§ 26-26-401, -402) must be adjusted pursuant to Amendment 59 and A.C.A. § 26-26-402, even though such reassessment is not part of a statewide reappraisal program.
The same rules of construction and interpretation apply to both constitutional provisions and statutes. Gazaway v. Greene CountyEqualization Bd., 314 Ark. 569, 864 S.W.2d 233 (1993). The primary goal and fundamental rule in the interpretation of either is to give effect to the intent of the people or legislature, as applicable. Rockefeller v.Hogue, 244 Ark. 1029, 429 S.W.2d 85 (1968), Faubus v. Kinney,239 Ark. 443, 389 S.W.2d 887 (1965) (constitutional provisions); Rosario v.State, 319 Ark. 764, 894 S.W.2d 888 (1995) (statutes). The intent of the people or legislature is ordinarily determined by reference to the plain meaning of the words used. Hercules, Inc. v. Pledger, 319 Ark. 702,894 S.W.2d 576 (1995). When an enactment is ambiguous, however, courts will attempt to discern intent from the enactment's subject matter, the objects to be accomplished, and other extrinsic matters. John B. May Co.v. McCastlain, 244 Ark. 495, 426 S.W.2d 158 (1968).
The intent of the people in adopting Amendment 59, and of the legislature in enacting Act 848, seems clear when one examines only those portions of the enactments that affirmatively require tax rate adjustments. The first sentence of Amendment 59 and the first sentence of A.C.A. § 26-26-402 are substantially similar in relevant part and are the provisions of law that expressly mandate the adjustment of tax rates. Both require an adjustment to take place "[w]henever a countywide reappraisal or reassessment" shows the requisite increase in value. Neither sentence makes any reference to a "base year" or suggests in any way that "a countywide reappraisal or reassessment" means only one that is part of a statewide program.
The conclusion that a qualifying countywide reassessment need not be part of a statewide program in order for Amendment 59 to apply is bolstered by several extrinsic matters. First, the ballot title used in the election at which Amendment 59 was adopted did not use the term "base year" or otherwise refer directly or indirectly to statewide programs, and the first portion thereof provided:
 A PROPOSED CONSTITUTIONAL AMENDMENT TO REDUCE THE PROPERTY TAX BURDEN UPON THE TAXPAYERS IN THIS STATE BY ESTABLISHING PROCEDURES TO PROVIDE FOR THE ADJUSTMENT OR ROLLBACK OF MILLAGE RATES WHENEVER ASSESSED VALUE OF PROPERTY IN A TAXING UNIT GOES UP MORE THAN TEN PERCENT (10%) AS A RESULT OF A COUNTYWIDE REAPPRAISAL AND REASSESSMENT OF PROPERTY;. . . .
If one concludes that countywide reassessments that are not part of a statewide program are not described by the foregoing language, one must also conclude, it seems to me, that the ballot title was materially misleading. In my opinion, the better course is to regard the ballot title as evidence of the intention of the voters, as is proper in cases involving ambiguity. Southwest Arkansas Communications, Inc. v.Arrington, 296 Ark. 141, 753 S.W.2d 267 (1988) (Glaze, J., concurring).
Second, it is clear that the General Assembly, in developing what ultimately became Amendment 59, and in enacting Act 848, believed that Amendment 59 and the act would apply in the case of countywide reassessments that are not part of a statewide program. Section 8 of Act 848, codified at A.C.A. § 26-26-401, provides that the act applies to, among others, those countywide reappraisals that are "initiated by the assessor, the county equalization board, by directive of the quorum court or upon request of one (1) or more taxing units of a county. . . ." The General Assembly surely was aware that officials of counties and local taxing units are powerless to initiate statewide reappraisal programs. It is also clear that the General Assembly still believes that Amendment 59 applies to countywide reassessments that are not part of a statewide program. Act 758 of 1995 provides that the performance of a county's required cyclical assessment review program will not "constitute a comprehensive countywide reappraisal for purposes of triggering the provisions of Amendment 59. . . ." Act 758, § 3, codified at A.C.A. §26-26-305(e) (Supp. 1995). The cyclical review programs required by Act 758 are not part of a statewide program. In addition, a review of the development of SJR 1, which ultimately became Amendment 59, reveals that early drafts of the amendment clearly contemplated that countywide reassessments that are not part of a statewide program would cause tax rate adjustment. The definition of "base year" was added to the proposal in connection with the development of provisions applying only to public utilities and regulated carriers and that were to apply only after a statewide reappraisal. The definition, initially at least, had relevance only to such taxpayers: the term "base year" did not appear in the provisions mandating tax rate adjustment. In my opinion, a review of the development of the amendment demonstrates beyond any real doubt that the inclusion of the phrase "as a part of a statewide reappraisal program" was inadvertent as to the provisions at issue here, although apparently both necessary and appropriate as to other provisions of the amendment.
Finally, I am aware of no court decision holding or even suggesting that countywide reassessments must be part of a statewide program before Amendment 59 will be triggered. It is true that an Arkansas appellate court has never been required to address the question at issue here, but in Pockrus v. Bella Vista Village Property Owners Ass'n, 316 Ark. 468,872 S.W.2d 416 (1994), the chancellor held that Amendment 59 applied to a county's reassessment program that was not part of a statewide program. The Supreme Court of Arkansas reversed and dismissed the case on jurisdictional grounds, not reaching the issue at hand. In Gazaway, the court quoted A.C.A. § 26-26-401 and held that the appraisal at issue there did not result from "a county or statewide reappraisal" described by the statute and therefore was not governed by a provision of Act 848.Gazaway, 314 Ark. at 574. In my view, the court's holding implicitly supports my conclusion here.
A constitutional amendment that is ambiguous should be construed so as to effectuate the will of the people and, if a liberal interpretation of the language used is necessary for that purpose, one will be adopted.Southwest Arkansas Communications, 296 Ark. at 147 (Glaze, J., concurring). See also Knox v. Williamson, 241 Ark. 455, 408 S.W.2d 501
(1966); Walton v. Arkansas Constr. Comm'n, 190 Ark. 775, 80 S.W.2d 927
(1935). The Supreme Court of Arkansas has stated:
 In the case of Bailey v. Abington, [201 Ark. 1072, 148 S.W.2d 176
(1941)], this Court held that in construing legislation and Constitutional provisions, it is the duty of the courts to ascertain and give effect to the intent of the framers and to the people who adopted it, even though the true intention, though obvious, has not been expressed by the language employed when given its literal meaning; that the courts are confined to the real purpose and intention of the language rather than to the literal verbiage employed; that the reason, spirit, and intention of the legislation or Constitutional provision shall prevail over its letter; that this rule of construction is especially applicable where adherence to the letter would result in absurdity or injustice, or would lead to contradiction, or would defeat the plain purpose of the law; and that to afford such construction, courts must restrict, modify, enlarge, and/or transpose the expressed terms.
Berry v. Gordon, 237 Ark. 547, 558-559, 376 S.W.2d 279 (1964).
In my opinion, the rules stated in Berry are applicable here, and the phrase "as a part of a statewide reappraisal program" appearing in Amendment 59 must be disregarded in determining whether a countywide reassessment triggers a tax rate adjustment. The spirit and intent of the amendment are, in my view, that countywide reassessments that otherwise qualify will occasion a tax rate adjustment. I cannot accept the proposition that the people intended, by defining a term deep within a long and complex text, to place such a significant restriction upon the scope of Amendment 59, particularly when that restriction is neither apparent nor suggested by either the ballot title or the provisions of the amendment that affirmatively require tax rate adjustment. Because the General Assembly may not restrict the scope of constitutional guarantees, and because there is no indication that the General Assembly so intended here, it is my opinion that Act 848 must be similarly interpreted.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh