Harry WARD, Individually and on Behalf of Arkansans to
Protect Police, Libraries, Education & Services, *Petitioner v.*
Sharon PRIEST, Secretary of State, Respondent; Karl Kimball,
Gerhard Langguth, and Jeff Cantwell, Individually and as
Members of the Arkansas Libertarians Eliminating Regressive Taxes
(ALERT) d/b/a Committee to Axe the Food Tax, *Intervenors*

02-954 86 S.W.3d 884

Supreme Court of Arkansas
Opinion delivered October 24, 2002

*Friday, Eldredge & Clark*, by: *Robert S. Shafer*, for petitioner.

*Tim Humphries*, Gen. Counsel, Sec. of State; and *Mark Pryor*, Att'y Gen., by: *Jeff R. Priebe*, Ass't Att'y Gen., for respondent.

*Williams & Anderson LLP*, by: *Jess Askew III, Beth M. Deere*, and *Sarah M. Priebe*, for intervenors.

A NNABELLE CLINTON IMBER, Justice. This case involves an original action petition filed pursuant to Amendment 7 to the Arkansas Constitution by petitioner Harry Ward, on behalf of himself and others similarly situated, and a ballot-question committee known as Arkansans to Protect Police, Libraries, Education, and Services (referred to collectively as "APPLES"). The petition deals with a proposed amendment to the Arkansas Constitution to abolish taxes on food and medicine. On May 7, 2001, the Attorney General issued an opinion certifying, with certain revisions, the text of the popular name and ballot title for the amendment submitted by a committee known as the Arkansas Libertarians Eliminating Regressive Taxes (ALERT). On May 10, 2001, the Secretary of State approved and certified as sufficient the proposed popular name and ballot title for the ballot and ALERT proceeded to gather the requisite number of signatures. ALERT then filed the initiative petition with the Secretary of State on July 5, 2002, asking to have placed on the ballot an amendment to the

Arkansas Constitution entitled "Amendment Eliminating Taxes on Food and Medicine." On September 10, 2002, the Secretary of State certified that the petition submitted for the proposed amendment met the signature requirements and the requirements of Amendment 7 to the Arkansas Constitution in order to place the initiative on the election ballot for the November 5 general election.

APPLES filed its original action petition in this court on September 13, 2002, seeking a review of the Secretary of State's decision in accordance with Ark. Const. amend. 7. In its petition, APPLES asks this court to declare that the popular name and ballot title of the proposed amendment are inaccurate, incomplete, misleading, and invalid. Specifically, APPLES maintains that (1) the references to matters outside the ballot title are insufficient to inform the voters concerning the choice they are called upon to make, (2) the ballot title fails to inform the voters about the fiscal consequences of the proposed amendment, and (3) the definitions of the terms "food" and "medicine" as referenced on the ballot title are inaccurate and misleading. Based on these claims, APPLES asks that the Secretary of State be enjoined from placing the proposed amendment on the ballot, or alternatively that any votes cast on the proposed amendment not be counted or certified.

The petition for review is opposed by the respondent, Sharon Priest, Secretary of State, and by Karl Kimball, Gerhard Langguth, and Jeff Cantwell, on behalf of themselves and ALERT, the committee sponsoring the proposed amendment, who have joined in the respondent's position by way of intervention. The respondent also affirmatively pleads lack of subject-matter jurisdiction and failure to exhaust administrative remedies under Act 877 of 1999.

A majority of the court agrees that jurisdiction is proper; whereas, three of the seven justices would dismiss for lack of jurisdiction. On the merits of the challenge to the sufficiency of the popular name and ballot title, a majority of justices has been unable to agree on a single ground to grant the petition. Justices ARNOLD, IMBER, HANNAH, and Special Justice HOLT agree that jurisdiction is proper. Justices GLAZE, CORBIN, and BROWN

would dismiss the petition for lack of jurisdiction and, therefore, do not address the merits. On the merits, Justices ARNOLD and IMBER would deny the petition, while Justice HANNAH and Special Justice HOLT would grant the petition. Accordingly, three justices would dismiss the petition, two justices would deny the petition, and two justices would grant the petition. Thus, because four justices do not agree to grant, the petition is effectively denied, and the opinions of this court on the merits of the ballot title have no precedential value.

## I. Jurisdiction

■ Jurisdiction to review the sufficiency of statewide initiative petitions is conferred upon this court by way of Amendment 7 to the Arkansas Constitution. Amendment 7 states that "[t]he sufficiency of all State-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes." Ark. Const. amend. 7. On September 10, 2002, the Secretary of State certified that the initiative petition met all the requirements of Amendment 7. Following such a certification by the Secretary of State, Amendment 7 clearly confers original and exclusive jurisdiction upon this court to review the Secretary of State's decision as to the sufficiency of the petition.

Nonetheless, the respondent argues that with the enactment of Act 877 in 1999, codified at Ark. Code Ann. § 7-9-501 et seq. (Repl. 2000), the General Assembly has provided for a constitutional initiative and referendum procedure that effectively strips the court of jurisdiction until such a time as the Secretary of State makes a determination of legal sufficiency following a written request for such a determination pursuant to Act 877. By contending that Act 877 is mandatory, the respondent essentially suggests that the original jurisdiction conferred upon this court by Amendment 7 may be restricted by legislative enactment. In other words, the respondent submits that in order to invoke this court's jurisdiction after the Secretary of State has certified an initiative petition pursuant to Amendment 7, a taxpayer and voter must first submit a written petition to the Secretary of State under

Act 877 requesting a determination of legal sufficiency before this court may review the sufficiency of any statewide initiative petition.

■ Under the respondent's interpretation of Act 877 and this court's decision in *Stilley v. Priest*, 341 Ark. 329, 16 S.W.3d 251(2000) (*Stilley II*), the General Assembly would be allowed to change the provisions of Amendment 7 to the Arkansas Constitution — clearly an impermissible exercise of legislative authority. We decline to construe Act 877 so as to render it unconstitutional. All doubts pertaining to a statute in question are resolved in favor of constitutionality. *Skelton v. Skelton*, 339 Ark. 227, 5 S.W.3d 2 (1999); *Arnold v. Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991). Where a constitutional construction is possible, we are compelled to uphold the validity of the statute under attack. *Skelton, supra*. Thus, in upholding the constitutionality of Act 877 to the extent that it allows this court to take jurisdiction prior to the gathering of signatures, we stated in *Stilley II*:

> We have come to the conclusion that both *Scott v. McCuen, supra* and *Finn v. McCuen, supra*, were wrongly decided with respect to the jurisdiction of this court. We first observe that while Amendment 7 does contemplate filing the initiative petition with the requisite signatures with the Secretary of State for a sufficiency determination, *at no point does it preclude an earlier review* of the text of the popular name and ballot title or the validity of the proposed amendment. On the contrary, Amendment 7 specifically provides that "laws may be enacted to facilitate its operation." *An early resolution of a contest to the content of a popular name and ballot title and the validity of the initiative would certainly facilitate the process for legislative enactments by the people.*

*Stilley II*, 341 Ark. at 334, 16 S.W.3d at 254 (emphasis added). By holding that Amendment 7 does not preclude an earlier review of the Secretary of State's sufficiency determination, this court did not interpret Act 877 to restrict our original jurisdiction to the confines of the Act. Indeed, it is one thing to state that an earlier review is not precluded by the constitution and quite another to uphold the constitutionality of a legislative enactment requiring early review of the text of a popular name and ballot title.

Act 877's stated purpose is to provide for the timely and expeditious review of the legal sufficiency of initiative petitions by the Supreme Court. Ark. Code Ann. § 7-9-501 (Repl. 2000). In *Stilley II*, we held that the operation of Amendment 7 to the Arkansas Constitution was facilitated by Act 877 in that it allowed the court to review the legal sufficiency of an initiative petition prior to the gathering of signatures. *Stilley II, supra.* Act 877 also states that it is intended to provide "a process to timely review the legal sufficiency of a measure in a manner which avoids voter confusion and frustration which occur when measures are stricken from the ballot on the eve of an election on the measure." Ark. Code Ann. § 7-9-502 (Repl. 2000). The respondent contends any holding that would only make the procedures in Act 877 mandatory for ballot-title review prior to the gathering of signatures would be inconsistent with our concerns about last-minute challenges. On the contrary, requiring a challenger to petition the Secretary of State for a legal-sufficiency determination under Act 877 after the initiative has been certified as meeting the requirements of Amendment 7 would in fact hinder expeditious review. Instead, it would promote review by this court in the final hour, the exact scenario this court has been trying to avoid. *See Roberts v. Priest*, 334 Ark. 503, 975 S.W.2d 850 (1998) (*Roberts I*); *Scott v. Priest*, 326 Ark. 328, 932 S.W.2d 746 (1996); *Page v. McCuen*, 318 Ark. 342, 884 S.W.2d 951 (1994).

■ Under the reasoning advanced by the respondent, our review of a sufficiency challenge submitted after signatures have been gathered could be delayed by as much as thirty days. *See* Ark. Code Ann. § 7-9-503(a), (b) (Repl. 2000) (providing the Secretary of State thirty days to review the petition). This court has steadfastly· adhered to the policy of reviewing ballot titles earlier rather than later. *See Roberts I, supra; Scott v. Priest, supra; Page v. McCuen, supra.* Forcing an additional review by the Secretary of State does nothing to facilitate early review; quite to the contrary, it promotes late review. In fact, in oral argument, ALERT conceded that if this court dismissed this case for lack of jurisdiction today, APPLES could theoretically have the petition reviewed by the Secretary of State tomorrow, and then refile an original action

in this court on the same day. Our review would thus be postponed beyond the eleventh hour.

 Moreover, as to the timeliness of an action challenging an early determination of sufficiency under Act 877, we stated in *Roberts v. Priest* that Act 280 of 1989, which required such challenges to be filed within forty-five days of publication, had been superseded by Act 877 and that Act 877 "contains no time limitation for challenges to sufficiency determinations by the Secretary of State." *Roberts v. Priest*, 341 Ark. 813, 826, 20 S.W.3d 376, 383 (*Roberts II*). Accordingly, while Act 877 can provide this court with jurisdiction prior to the gathering of signatures, it does not operate as a time bar to prevent this court from reviewing a sufficiency determination after signatures have been gathered and the Secretary of State has certified the initiative for placement on the ballot.

 Prior to Act 877, this court's jurisdiction attached pursuant to Amendment 7 after the Secretary of State certified the sufficiency of the popular name, ballot title, and signatures on an initiative petition. *See Finn v. McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990); *Scott v. McCuen*, 289 Ark. 41, 709 S.W.2d 34 (1986). In *Stilley II*, we held that Act 877 provides a manner in which this court may constitutionally review the legal sufficiency of a ballot title prior to the collection of signatures. *Stilley II*, 341 Ark. 329, 16 S.W.3d 251. Contrary to the respondent's contention that *Stilley v. Priest*, 340 Ark. 259, 12 S.W.3d 189 (2000) (*per curiam*) (*Stilley I*) is controlling, the requirements of Act 877 are only mandated when, as in *Stilley I*, review is sought prior to the gathering of signatures. *Stilley I, supra*. In *Stilley II* we overruled *Finn* and *Scott* "to the extent that they prevent[ed] a review of the text of a popular name and ballot title and the validity of the proposed measure *prefatory to the gathering of signatures*." 341 Ark. at 337, 16 S.W.3d at 256-57 (emphasis added). The *Stilley I* and *Stilley II* cases both involved a challenge to the popular name and ballot title prior to the gathering of signatures. Similarly, *Roberts II* involved a pre-signature sufficiency challenge under Act 877. 341 Ark. at 826, 20 S.W.3d at 383. In this trilogy of cases, however, we have never suggested that Amendment 7 no longer confers original and exclusive jurisdiction upon this court once the Secre-

tary of State certifies that the initiative has met the requirements of Amendment 7 for placement on the ballot.

■ More importantly, the plain language of Act 877 supports our holding that compliance with Act 877 is discretionary and not mandatory: "Any Arkansas taxpayer and voter *may* submit a written petition to the Secretary of State requesting the determination of legal sufficiency of statewide initiative petitions." Ark. Code Ann. § 7-9-503(a)(1) (Repl. 2000) (emphasis added). We decline to adopt the reasoning that either Act 877 or our holdings in *Stilley I* and *Stilley II* stripped this court of original jurisdiction until such time as the Secretary of State makes a legal sufficiency determination following a written request pursuant to the Act. A challenger may seek to have the sufficiency of an initiative petition reviewed by this court either prior to the collection of signatures under Act 877, or after signatures have been gathered and the Secretary of State has certified the initiative petition pursuant to Amendment 7. The early-review alternative available under Act 877 applies to "all initiative petitions submitted to the Attorney General after March 25, 1999." Ark. Code Ann. § 7-9-506(b) (Repl. 2000). Act 877 merely provides a procedure whereby a taxpayer and voter *may* seek an early review of a ballot title's legal sufficiency prior to the gathering of signatures; that is, it is discretionary. Accordingly, we reaffirm that this court has original and exclusive jurisdiction after the Secretary of State certifies that an initiative petition has met the signature requirements and the requirements of Amendment 7.

## II. Administrative Remedies

The respondent also maintains that the petition should be dismissed because APPLES has failed to exhaust its administrative remedies. Specifically, she asserts that Act 877 is an administrative remedy that APPLES must exhaust before resorting to court action. By way of analogy, the respondent suggests that this action is similar to a request for declaratory relief, and as such, Act 877's review process must be exhausted prior to the filing of an action for declaratory judgment.

■ We agree with the respondent's general statement of the law that it is better to pursue administrative remedies to conclusion before resorting to the court system. *See Meyers v. Bethlehem Bldg. Corp.*, 303 U.S. 41 (1938). Such logic is based on jurisprudential reasoning that supports applying for relief to the proper place first. *See, e.g., Ragon v. Great Am. Indem., Co.*, 224 Ark. 387, 273 S.W.2d 524 (1954) (holding in a workers' compensation claim that "the Workmen's Compensation Commission is the proper place" to go for relief). Further, the rule promotes the establishment of a record by which an appellate court can intelligently determine the validity of acts. *Dixie Downs, Inc. v. Arkansas Racing Commission*, 219 Ark. 356, 242 S.W.2d 132 (1951).

■ These general propositions, however, do not apply where the Constitution confers original and exclusive jurisdiction upon this court. Ark. Const. amend. 7. Moreover, no "record" is established when the Secretary of State makes a legal-sufficiency determination under Act 877. Sufficiency of a ballot title is a matter of law to be decided by this court. *Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994). Thus, this court is the proper place to go for relief; that is, for a review of the Secretary of State's certification that an initiative petition has met all the requirements of Amendment 7 for placement on the ballot.

### III. Sufficiency of the Popular Name and Ballot Title

In this original action, APPLES challenges the sufficiency of the popular name and ballot title of the proposed amendment pursuant to Amendment 7 on five separate grounds. In points I, III, and IV, APPLES contends that the ballot title is insufficient to inform the voters concerning the choice they are being asked to make. In points II and V, APPLES asserts that the ballot title is inadequate, partisan, inaccurate, and misleading with regard to the impact of the proposed amendment on taxes and public services.

The proposed popular name and ballot title as certified by the Secretary of State are reproduced below.

**(Popular Name)**

### AMENDMENT ELIMINATING TAXES ON FOOD AND MEDICINE

**(Ballot Title)**

AN AMENDMENT TO THE ARKANSAS CONSTITU-
TION, ABOLISHING AND PROHIBITING TAXATION
ON FOOD AND MEDICINE; DEFINING "FOOD" TO
MEAN "ANY ITEM THAT WAS ELIGIBLE FOR
PURCHASE WITH FEDERAL FOOD STAMPS ON APRIL
1, 2001 OR IS OTHERWISE AVAILABLE UNDER ANY
STATE OR FEDERAL NUTRITION ASSISTANCE PRO-
GRAM AS EXISTING ON APRIL 1, 2001;" DEFINING
"MEDICINE" TO MEAN "ANY ITEM BEING FUR-
NISHED OR AVAILABLE AT A REDUCED COST
UNDER ANY STATE OR FEDERAL HEALTH CARE
ASSISTANCE PROGRAM ON APRIL 1, 2001;" PROVID-
ING THAT ALL NEW, ADDITIONAL, OR INCREASED
TAXES NOT EXEMPTING FOOD AND MEDICINE
SHALL BE VOID; PROVIDING THAT TAXES ON FOOD
AND MEDICINE ESTABLISHED BEFORE THE EFFEC-
TIVE DATE OF THIS AMENDMENT SHALL EXPIRE ON
JULY 4TH 2003, EXCEPT THAT THOSE REQUIRED TO
SECURE BONDS OR OTHER CONTRACTUAL OBLI-
GATIONS MAY BE EXTENDED TO SATISFY THOSE
OBLIGATIONS; AND REQUIRING THAT ALL REVE-
NUE FROM SUCH TAXES REGARDLESS OF SOURCE
SHALL BE USED EXCLUSIVELY TO FULFILL AND TER-
MINATE SUCH CONTRACTS AT THE EARLIEST POSSI-
BLE DATE. THIS AMENDMENT ABOLISHES ALL
FORMS AND TYPES OF TAXES ON FOOD AND
MEDICINE (AS THOSE TERMS ARE DEFINED HEREIN)
AND WILL RESULT IN A LOSS OF REVENUE FOR
STATE, COUNTY, AND CITY GOVERNMENTS, AS
WELL AS SCHOOL DISTRICTS, WITH THE RESULT
THAT A REDUCTION IN THE SERVICES PROVIDED BY
THOSE ENTITIES AND/OR AN INCREASE IN OTHER
TAXES MAY BE REQUIRED.

The ballot title mirrors the text of the proposed amendment
itself, except that the ballot title adds the language at the end
informing the voters that the amendment abolishes all forms and

types of taxes on food and medicine and will result in a loss of revenue for various governmental entities, such that a reduction in government services, or an increase in other taxes, or both, may be required.

### a. Insufficient to Inform the Voters

 The rules and standards governing initiatives under Amendment 7 are well established in Arkansas. The various tests focus on whether the ballot title is (1) intelligible, (2) honest, and (3) impartial. *Leigh v. Hall*, 232 Ark. 558, 339 S.W.2d 104 (1960). However, this court is neither to interpret a proposed amendment nor discuss its merits or faults. *Ferstl v. McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988). The ballot title must be an impartial summary of the proposed amendment and it must give voters a fair understanding of the issues presented and the scope and significance of the proposed changes. *Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000); *Parker v. Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996). The ballot title must be free from misleading tendencies that, whether by amplification, omission, or fallacy, thwart a fair understanding of the issues presented. *Parker v. Priest, supra; Bradley v. Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952); *Westbrook v. McDonald*, 184 Ark. 740, 43 S.W.2d 356 (1931). It is insufficient if it omits material information that would give the voter serious grounds for reflection. *Bailey v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994). It may also be safely stated that, if the ballot title identifies the proposed amendment and fairly alleges the general purposes thereof, it is sufficient. *Porter v. McCuen*, 310 Ark. 562, 839 S.W.2d 512 (1992); *Newton v. Hall*, 196 Ark. 929, 120 S.W.2d 364 (1938). Our long-settled rule is that a ballot title is sufficient if it recites the general purposes of the proposed law and if the ballot title contains enough information to sufficiently advise voters of the true contents of the proposed law. *Walker v. McCuen*, 342 Ark. 410, 29 S.W.3d 657 (2000); *Newton v. Hall, supra*. Furthermore, it must be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Roberts II*, 341 Ark. 813, 20 S.W.3d 376 (2000); *Bradley v. Hall, supra*. The party challenging the ballot title has the burden of

proving that it is misleading or insufficient. Ark. Const. amend. 7; *Parker v. Priest, supra.*

 The popular name of a proposed constitutional amendment is primarily a legislative device that is not held to the same stringent standards and need not be as explicit as a ballot title. *Roberts II, supra.* Its purpose is to identify the proposal for discussion prior to the election. *Arkansas Women's Political Caucus v. Riviere,* 283 Ark. 463, 677 S.W.2d 846 (1984). However, it cannot contain catch phrases or slogans that tend to mislead or give partisan coloring to a proposal. *Id.* Furthermore, when we review the sufficiency of the ballot title and popular name, we will construe the two provisions together. *Roberts II, supra.* Additionally, this court does not defer to the Attorney General's certification of the ballot title or give it presumptive effect. *Crochet v. Priest,* 326 Ark. 338, 931 S.W.2d 128 (1996); *Bailey v. McCuen,* 318 Ark. 277, 884 S.W.2d 938 (1994). Our most significant rule in determining the sufficiency of the title is that it be given a liberal construction and interpretation in order that it secure the purposes of reserving to the people the right to adopt, reject, approve, or disapprove legislation. *Gaines v. McCuen,* 296 Ark. 513, 758 S.W.2d 403 (1988).

 The ballot title at issue in this original action defines "food" and "medicine" by using cross-references to state and federal nutrition and healthcare assistance programs. Specifically, the ballot title and the amendment state that food means "any item that was eligible for purchase with Federal Food Stamps on April 1, 2001 or is otherwise available under any state or federal nutrition assistance program existing on April 1, 2001," and that medicine means "any item being furnished or available at a reduced cost under any state or federal health care assistance program on April 1, 2001." APPLES maintains that the cross-references to federal and state nutrition and health care assistance programs are insufficient to explain the scope of the proposed amendment to the voters. APPLES relies on a line of authority culminating in *Kurrus v. Priest, supra,* decided by this court in 2000. In *Kurrus,* the petitioner argued that the organization of the ballot title effectively concealed the controversial aspects of the proposal. The court agreed and struck the ballot title, holding

that the ballot title was insufficient because it did not inform the voter that by approving the measure, he or she may risk losing government services. *Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669. The ballot title before the court today clearly informs the voter that a loss of services or an increase in taxes or both may occur with passage of the amendment.

The *Kurrus* decision further held that the definition of "tax increase" in both the ballot title and the text of the amendment itself did not sufficiently convey the legal differences between the terms "tax" and "fee," and thus, the ballot title was misleading. In contrast, the ballot title and amendment here give the voter an established benchmark. The definitions of "food" and "medicine" are keyed to government programs that have been in existence for many years, such as the Federal Food Stamp Program for low-income families, and the Medicare and Medicaid programs for the elderly and low-income families.

In summing up the ballot title's deficiencies in *Kurrus*, the court determined that the ballot title did not "honestly and accurately reflect what [was] contained in the proposed amendment." *Kurrus v Priest*, 342 Ark at 445, 29 S.W.3d at 675. Here, the language in the ballot title, as in *Becker v. Riviere*, 270 Ark. 219, 604 S.W.2d 555 (1980), virtually tracks the language of the proposed amendment. As ALERT suggests, the most accurate way to reflect what is contained in the proposed amendment is to nearly repeat the proposed amendment word for word.

Likewise, in *Christian Civic Action Committee v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994), we struck a ballot and held unacceptable the combination of length and the "strategic employment of abstract terminology to mask plain meaning and the tactical placement of key elements relating to for-profit gambling in the middle or near the end of the title's text." 318 Ark. at 248, 884 S.W.2d at 609. The sponsors scrupulously avoided the use of the term "casino" to describe the enterprise, and they affirmatively stated that the measure would prohibit "casinos, gambling houses, and gambling operations and other gambling and gaming activities," thereby misleading the electorate. *Id.* at 249, 884 S.W.2d at 610. The court concluded that

euphemistic language designed to cloak in semantic obscurity the actual nature of the proposed enterprise impermissibly paints a ballot title with partisan coloring. *Christian Civic Action Committee v. McCuen, supra.* In a similar vein, this court struck the ballot title in *Crochet v. Priest*, 326 Ark. 338, 931 S.W.2d 128 (1996), where we held that the use of the term "video terminal games" was a euphemistic disguise for slot machines and created a fatally misleading tendency in the ballot title and tinged it with partisan coloring. *Crochet v. Priest, supra.* Here, the length of the ballot title is certainly of no concern. Furthermore, there is no strategic masking of words. The definitions of "food" and "medicine" in the ballot title incorporate an established benchmark. There is no attempt to "pull the wool over the eyes of the voter."

 Another case cited by APPLES, *Arkansas Women's Political Caucus v. Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984), involved a partisan naming of a ballot title. We held that the popular name "The Unborn Child Amendment" was designed to evoke a passionate, rather than a reasoned, response from the electorate where the subject matter of the amendment was abortion. The ballot title's popular name here, "Amendment Eliminating Taxes on Food and Medicine," is not emotionally charged. It is an honest and impartial description that adequately identifies the proposed amendment.

 Another inapposite case is *Roberts II*, where this court held that internal inconsistencies rendered the ballot title insufficient. 341 Ark. 813, 20 S.W.3d 376. We looked at the terminology in the proposed initiative itself only to show that it was just as incomprehensible as the ballot title. *Id.* The ballot title before us does not contain any inconsistencies, whether they be internal or between the ballot title and the proposed amendment.

In essence, APPLES urges this court to hold that the use of cross-references, specifically those to legislative acts, renders a ballot title *per se* insufficient. In *Ragan v. Venhaus*, 289 Ark. 266, 711 S.W.2d 467 (1986), and *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998), we stated that voters do not have ready access to the acts of the legislature. *Ragan* and *Daniel* were both illegal exaction cases dealing with the issue of disclosure on local tax initiatives.

In *Ragan*, the ballot title did not inform voters that they were not only authorizing a sales tax but also a use tax. *Ragan v. Venhaus, supra*. Specifically, the ballot stated that the ordinance would impose a sales tax pursuant to an act that had been amended by another act. *Id.* The amended act provided that both a sales tax and use tax would be levied. *Id.* In holding the ordinance was an attempt to enact a tax without a referendum, we stated that "[e]mploying the phrase 'sales tax' with no mention of 'use tax' is at best misleading, even if a referenced act in the ballot title clearly and specifically requires a use tax to be imposed if a sales tax is imposed." *Id.* at 271, 711 S.W.2d at 469.

Similarly, the cross-reference in *Daniel* was misleading and was not used to define a term. The *Daniel* ballot cross-referenced an act that required a certain distribution of the funds collected through a tax. *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226. The *Daniel* court found an illegal exaction where the ordinance allowed tax revenues to be spent on purposes other than those revealed on the ballot. Specifically, the cross-referenced act allowed funds to be distributed to cities for general use after a three-percent service charge was paid to the State Treasurer; whereas, the ballot title stated that the funds would be used in their entirety for five specified purposes. *Id.* We stated that voters could not have known that the cities would receive funds and spend them for purposes other than those designated on the ballot by a mere reference that the ordinance was pursuant to an act. *Id.*

*Ragan* and *Daniel* are inapposite. Here, there is full disclosure that the proposed amendment will abolish taxes on food and medicine as those terms are defined. The definitions of the terms "food" and "medicine" in the ballot title adopt an established benchmark. In the case of food, that benchmark is the Federal Food Stamp program and any state or federal nutrition assistance program. Any state or federal health care assistance program is its benchmark for medicine. Once again, a reasonable voter would recognize that these definitions are keyed to government programs that offer assistance to elderly and low-income

families. As such, a reasonable voter would be sufficiently informed of the scope and import of his or her vote.[1]

APPLES next asserts that the ballot title is insufficient in that the definitions of "food" and "medicine" in the ballot title and the text of the amendment are different from their meaning to the average voter. Relying largely on *Scott v. Priest*, 326 Ark. 328, 932 S.W.2d 746 (1996), the contention is that the voters would not reasonably expect certain items that were eligible for purchase or otherwise available on April 1, 2001, under the identified government programs to be considered food and medicine. APPLES explains that under the Federal Food Stamp program, codified at 7 U.S.C. § 2012(g), food is defined as "any food or food product for home consumption except alcoholic beverages, tobacco, and hot foods or hot food products ready for immediate consumption" followed by eight additional clauses, two of which define "food" in ways APPLES contends no reasonable person would think of as food. Particularly, APPLES claims that a reasonable voter would not think of food as "seeds and plants for use in gardens to produce food for the personal consumption" or "equipment for procuring food by hunting and fishing, such as nets, hooks, rods, harpoons, and knives." 7 U.S.C. § 2012(g)(2), (6). ALERT disagrees, stating that equipment for procuring food is only food in remote regions of Alaska and inapplicable while the notion that seeds and plants constitute food is either reasonable or immaterial.

As to the definition of "medicine" in the ballot title, APPLES maintains that the proposed amendment includes medical equipment and medical devices beyond the common understanding of medicine to the voters. Furthermore, APPLES asserts that voters will be surprised to learn that some over-the-counter products but not others will be covered by the definition of medicine. In response, ALERT maintains that voters are familiar with the proposed amendment's definition of medicine and will

---

[1] We note that similar cross-references were used in ballot titles that this court has held to be sufficient under Amendment 7. *See Walker v. Priest*, 342 Ark. 410, 428, 29 S.W.3d 657, 666 (2000) (referencing "Prevention and Cessation Programs," "Targeted State Needs Programs," and "the Medicaid Expansion Program"); *Porter v. McCuen*, 310 Ark. 562, 839 S.W.2d 512 (1992) (referencing all existing taxes and the tax rate on "other tobacco products" to be determined by the Department of Finance and Administration).

not be surprised by its impact. ALERT concludes that exploration of the issue is immaterial where under the proposed amendment voters will simply vote on the policy of taxing food and medicine as the government defines those terms.

Had the ballot title listed all provisions that arguably constitute food or medicine under federal and state nutrition assistance programs or medical assistance programs, the voter would likely get lost in governmental minutiae and bureaucratese. As previously stated, a ballot title is sufficient if it identifies the proposed Act and fairly alleges the general purpose thereof. *Porter v. McCuen, supra; Coleman v. Sherrill*, 189 Ark. 843, 75 S.W.2d 248 (1934). More importantly, "it is not our function in the present litigation to interpret the amendment or explain how it is to be implemented." *Ferstl v. McCuen*, 296 Ark. 504, 510, 758 S.W.2d 398, 401 (1988); *see also Mason v. O. Jernigan*, 260 Ark. 385, 391, 54 S.W.2d 851, 854 (1976) ("Let it be remembered that the purpose of a ballot title is not to 'interpret' the amendment, but only to summarize adequately the provisions of such amendment; nor is it our function in the present litigation to interpret the amendment itself").

APPLES's position in this original action is also not supported by our decision in *Scott v. Priest*, 326 Ark. 328, 932 S.W.2d 746 (1996), where the ballot title failed to mention preferential treatment that was granted by the proposed amendment itself. *Scott v. Priest, supra.* The court held that such an omission would give the voters serious grounds for reflection. *Id.* Further, the court concluded that the definition of gross revenues was misleading as it was later defined as an amount received less an amount paid. *Id.* Additionally, the court found other descriptions that were spelled out in the amendment but left out of the ballot title. *Id.* The *Scott* decision simply held that ballot title was insufficient inasmuch as it *omitted* numerous provisions in the amendment's text. *Id.* The ballot title before us does not present such facts. Indeed, the ballot title clearly defines the scope of the amendment by virtually reproducing the amendment's language word for word.

■ Ultimately, the central question to be resolved is whether the voter is capable of understanding that any item eligible to be purchased or otherwise available under any state or federal nutrition or health care assistance program will no longer be taxed. The answer is yes because "no material omissions or misleading tendencies result from the ballot title's wording that [would] thwart a fair understanding of the [amendment's] purposes." *Walker v. Priest*, 342 Ark. at 426, 29 S.W.3d at 664.

### b. Partisanship and Consequences

In their second and fifth points, APPLES's contentions amount to a challenge of the ballot title for failing to inform the voter of the consequence of their vote and for being partisan. We disagree. The voters are informed that the amendment "abolishes all forms and types of taxes on food and medicine (as those terms are defined herein) and will result in a loss of revenue for state, county, and city governments, as well as school districts, with the result that a reduction in the services provided by those entities and/or an increase in other taxes may be required."

The crux of APPLES argument is that the voters will not be able to understand the fiscal impact the passage of the amendment will have. In that regard, APPLES claims that the ballot does not sufficiently inform voters that the "soft-drink tax" and "hamburger tax" would be repealed resulting in a significant cut in the State Medicaid Program. The Arkansas Soft Drink Tax Act, codified at Ark. Code Ann. §§ 26-57-901—909 (Repl. 1997), levies a tax on soft-drink syrup or simple syrup, bottled soft drinks, and powder or other base products. The "hamburger tax," codified at Ark. Code Ann. §§ 26-74-501(2), 26-75-602(a), (c)(2) (Repl. 1997), provides for the taxation of certain prepared meals.

APPLES looks to the statutory language and determines that the proposed amendment's definition of food covers items in the "soft-drink tax" and, thus, effectively repeals the Soft Drink Tax Act. Moreover, APPLES concludes that food encompasses prepared meals, so the "hamburger tax" would also be repealed. APPLES alleges that the revenues from the "soft-drink tax" are deposited in the Arkansas Medicaid Program Trust Fund and used

exclusively for the state match of federal funds under the Arkansas Medicaid Program. APPLES goes on to conclude that the loss of revenue from the "soft drink-tax" alone will result in a loss of $118.9 million in federal matching funds. Thus, according to APPLES, the voters will not get a fair understanding of what it is they are being asked to decide. APPLES also alleges that the phrase "a reduction in the services provided by those entities and/or an increase in other taxes may be required" soft-pedals the material fiscal impact of the amendment, making it partisan and misleading.

 These conclusions are disputed by ALERT. It suggests that only wholesalers, distributers, and manufacturers are subject to the "soft-drink tax," and since food stamps cannot be used to buy from these entities, the "soft-drink tax" will not be affected. ALERT also asserts that APPLES is actually arguing the merits of the initiative, and the respondent points out that a finding as to the impact of the proposed amendment on the "soft-drink tax" or "hamburger tax" necessarily requires an interpretation of the measure's language and is beyond the scope of review by this court. We agree. As stated earlier, it is not our function to interpret the amendment or explain how it is to be implemented. *Ferstl v. McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988).

 This ballot title is readily distinguishable from three other cases cited by APPLES. Here, a representation in the text of the amendment is not omitted from the ballot title, as happened in *Page v. McCuen*, 318 Ark. 342, 884 S.W.2d 951 (1994). The ballot title at issue is simply not complex, detailed, lengthy, misleading, and confusing as was the case in *Dust v. Riviere*, 277 Ark. 1, 638 S.W.2d 663 (1982). The internal inconsistencies present in the ballot title in *Roberts v. Priest*, 341 Ark. 813, 20 S.W.3d 376 (2000), are not present here. Lastly, the Attorney General appropriately added language to the ballot title in order to comply with our holding in *Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000) (satisfaction of contractual obligations and the possible risk of losing government services).

The ballot title in this case presents the voter with a fair understanding of the issues presented and the scope and signifi-

cance of the proposed changes. Specifically, even a cursory examination of the popular name and ballot title reveals that the proposed amendment will eliminate taxes on food and medicine. The ballot title tracks the language in the proposed amendment and uses an established benchmark to define food and medicine — state and federal nutrition and health care assistance programs. The ballot title also tells the voter unequivocally that the proposed amendment "will result in a loss of revenue for state, county, and city governments, as well as school districts" and that "a reduction in the services provided by those entities and/or an increase in other taxes may be required."

■ For the foregoing reasons, we hold that the ballot title in this case is intelligible, honest, and impartial. Further, we conclude that the ballot title is an impartial summary of the proposed amendment and it gives voters a fair understanding of the issues presented and the scope and significance of the proposed changes. Moreover, the ballot title is free from any misleading tendencies that, whether by amplification, omission, or fallacy, would thwart a fair understanding of the issues presented. In short, the proposed initiative is adequately identified by popular name, and its general purposes are fairly stated in the ballot title.

Petition denied. The mandate shall issue immediately.

HANNAH, J., and HOLT, Sp.J., concur in part and dissent in part. GLAZE, CORBIN, and BROWN, JJ., dissent. ARNOLD, C.J., and IMBER, J., would deny the petition. HANNAH, J., and HOLT, Sp.J., would grant the petition. See concurring opinions of HANNAH, J., and HOLT, Sp.J. THORNTON, J., not participating.

TOM GLAZE, Justice. The majority opinion is clearly at odds with the Arkansas Constitution, Arkansas statutes, and this court's case law. The decision reached by the court cannot be more wrong, therefore, I vigorously dissent.

Amendment 7 to the Arkansas Constitution was overwhelmingly enacted by the voters in 1920. By Amendment 7, the people reserved to themselves the power to propose legislative measures and amendments to the constitution. Amendment 7 guarded against the erosion of the people's right to initiate and

refer measures to the vote of the people, by providing, "No legislation shall be enacted to restrict, hamper, or impair the exercise of the rights reserved to the people." To further protect against dilution of this reservoir of power given the people to initiate and refer measures to the vote of the people, the amendment also provided that the General Assembly may only enact laws to facilitate the voters' power.

During the past twelve or so years, citizens of this state have made concerted efforts to initiate measures to the Arkansas voters only to have their efforts rebuffed because this court found the proposed measures' ballot titles and popular names to be misleading or confusing. In those cases, the court struck those proposed measures from the ballot, or directed that the votes should not be counted or certified. As a result, the General Assembly in 1998 passed Act 280 in an effort to provide timetables that would permit the early review of ballot titles and popular names, so the voters' rights to vote on such proposals would not be impaired. In sum, the timetable allowed a binding review of ballot titles and popular names *prior* to the date when signatures on such petition must be filed with the Secretary of State. *See* Act 280 of 1989, § 10. The General Assembly's expressed intent was to facilitate the people's rights to initiate measures under Amendment 7.

Unfortunately, in a subsequent decision that was later overruled, this court held Act 280 to be unconstitutional. *See Finn v. McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990). The *Finn* majority held that Act 280 was unconstitutional because the Act permitted this court to review the decision of the Secretary of State with respect to the ballot title, when the only authority given this court by Amendment 7 was the authority to review the Secretary of State's certification of an initiative petition which includes both the ballot title *and* the signatures. *See Finn v. McCuen*, 303 Ark. at 425. In other words, because the constitution set no timetable constraints on this review of signatures on the initiative petition, the timetables set out in Act 280 for early review of popular names and ballot titles were in conflict with Amendment 7. Our court later overturned the *Finn* decision because our interpretation of Act 280 was too restrictive. *See Stilley v. Priest*, 341 Ark. 329, 16 S.W.3d 251 (2000).

In fact, *Finn* came into obvious disfavor with this court as early as 1994, when the court recognized that, since the 1990 *Finn* case, it had been presented with more initiative petitions to review than the court had had in any past election year. *See Page v. McCuen*, 318 Ark. 328, 884 S.W.2d 951 (1994). Without timetables or constraints like those set out in Act 280 (which the court found unconstitutional in *Finn*), the court was not permitted the time needed to deliberate ballot title and popular name issues.

In *Page*, the court explained its frustration with the last-minute reviews of ballot title and popular name issues as follows:

> We commend the General Assembly's past effort [by Act 280 of 1989] in attempting to establish reasonable statutory timetables to implement initiative and referendum measures under Amendment 7. We respectfully ask its further consideration and action and encourage the General Assembly to make another attempt to establish an initiative and referendum procedure that will permit early resolution of such issues. Until appropriate action is taken to correct the problems attendant to proposals submitted under Amendment 7, citizens can continue to expect measures to be removed from the ballot immediately prior to the election. This court does not enjoy being in the "last-minute" position of review. The people of Arkansas deserve an initiative and referendum procedure which allows them the confidence that measures, after having been adequately reviewed, will not be removed from the ballot. *The sponsors of initiative proposals should also be assured their ballot titles and proposed measures meet required guidelines and rules before they spend their time, energy and monies in getting their proposal before the voters.*

*Page*, 315 Ark. at 348 (emphasis added). The foregoing language in *Page* clearly indicated the court was ready to recognize its mistake in *Finn* and its willingness to consider a law that would provide for the Secretary of State's early review of ballot titles and popular names so that any deficiencies could be cured *prior* to signature gathering.

In 1996, in *Scott v. Priest*, 326 Ark. 328, 932 S.W.2d 746 (1996), this court repeated its concern over continued last-minute requests for reviews of ballot title and popular name issues. Again, the court asked the General Assembly to establish a constitutional

initiative petition procedure that would permit an early resolution of ballot title cases.[1] Once again, the General Assembly heeded our request by enacting Act 877 of 1999. The Act established a procedure that sponsors of initiative proposals could follow that would assure their ballot titles would meet required guidelines and rules *before* they expended their time and monies in gathering signatures to place their proposed measures on the ballot. Under Act 877, the sponsors have the time to cure any deficiencies found by the Secretary of State, so the voters signing the petition can be assured the Secretary of State has ruled and certified that the ballot title is correct.

After Act 877 was in place, our court reconsidered the *Finn* decision in the case of *Stilley v. Priest*, 341 Ark. 329, 16 S.W.3d 251 (2000) (*Stilley II*). There, our court predictably overruled the *Finn* case and acknowledged that *Finn's* decision, declaring Act 280 and its timetables unconstitutional, was wrong. We held that, to the extent *Finn* prevented a review of an initiative petition's popular name and ballot title prefatory to circulating the petitions for signatures, that decision was in error.[2] *Stilley II*, 341 Ark. at 337. Such a restrictive interpretation conflicted with the liberal manner in which Amendment 7 should be reviewed.

On the other hand, *Stilley II* upheld the General Assembly's enactment of Act 877 as constitutional. While Act 877 did not set out a timetable like those found earlier in Act 280, Act 877 clearly provides sponsors of proposed measures with a procedure they can utilize to get the Attorney General's and the Secretary of State's early review and certificate as to whether the sponsors' ballot titles and popular names are valid. In the instant case, for example, the Attorney General certified the sponsors' initiative petition on May 7, 2000, and the Secretary of State approved their petition on May 10, 2001. Nevertheless, APPLES, a taxpayers' group, waited until September 13, 2002, to attack the sponsors' popular name and

---

[1] The General Assembly actually first responded to this court's plea by referring to the people's proposed Amendment 3, which essentially was the same as Act 280 of 1989, but that proposal failed to be approved by the voters at the 1996 General Election.

[2] After overturning the *Finn* decision, the General Assembly was free to re-enact Act 280, if it had chosen to do so.

ballot title in this court. APPLES never asked the Secretary of State to determine the legal sufficiency of the sponsors' ballot title as is required under § 2 of Act 877. This 1999 Act is abundantly clear that *all* initiative petitions must now follow its provisions. Although the majority court holds otherwise, this clear wording does not render Act 877 as merely an option or alternate procedure by which a proposed measure can be placed on the ballot. *See Roberts v. Priest*, 341 Ark. 813, 20 S.W.3d 376 (2000) (where court held that Act 877, by its terms, applies to *all* petitions approved by the Attorney General and filed with the Secretary of State pursuant to § 7-9-107, as of March 25, 1999).

In an attempt to support its contention that Act 877 is merely an alternate procedure, the majority attaches its reasoning on a sentence in § 2(a)(1) of Act 877 whereby the Act provides that any taxpayer *may* submit a written petition to the Secretary of State requesting the determination of legal sufficiency of statewide initiative petitions. Of course, no taxpayer, voter, or other person or entity *must* challenge a statewide initiative petition, but if one does, § 2(a)(1) mandates that the taxpayer must follow the dictates of Act 877. If there is any question as to what Act 877 requires, the General Assembly made its intention clear by specifically stating that (1) Act 877 is intended to provide a process to timely review the legal sufficiency of a measure in a manner which avoids voter confusion and frustration which occurs when measures are stricken from the ballot on the eve of an election on the measure, and (2) § 5(a)(1) and (2), and 5(b) set out in cogent terms that Act 877 *shall be* applicable to *any* initiative petition that received approval of the Attorney General and has been filed with the Secretary of State, and the Secretary of State *shall* review *all* petitions approved by the Attorney General. In addition, I would ask the question if Act 877 was merely an alternate procedure to review ballot titles, why have the General Assembly and this court been striving to adopt laws and giving interpretations to them to obtain early reviews of initiative petitions, if we knew another procedure existed that still authorized the continuation of last-minute reviews?

The General Assembly and this court have worked hard to achieve a procedure to review initiative petitions early to eliminate

confusion to the voters. We have done that, but the majority court's decision has swept away those good works, leaving voters who wish to initiate proposed measures no effective way to assure their voices are heard regarding such proposed laws.

Even though our court has clearly held that the sponsors can submit their ballot titles and popular names to the Attorney General and the Secretary of State for their review prior to gathering signatures, the majority opinion simply ignores the language and mandates of Act 877 and our holdings in *Stilley II* and *Roberts*. Instead, the majority tries to breathe new life into the *Finn* ruling by permitting taxpayers to lie in wait in order to bring a last-minute challenge to the sponsors' petition. The majority decision in no way facilitates voters' rights to pursue initiative petitions as provided by Amendment 7, and in fact restricts and hampers those rights contrary to the explicit language of Amendment 7. The majority decision also totally ignores this court's earlier decision in *Stilley v. Priest*, 340 Ark. 259, 12 S.W.3d 189 (2000) (*Stilley I*), *where this court dismissed the sponsors' appeal to this court because those sponsors failed to have the Secretary of State review and certify their popular name and ballot title as required by Act 877*. In the instant case, the sponsors obtained the Secretary of State's certification that their ballot title is valid, but APPLES, as the taxpayer group challenging the Secretary of State's certification, has steadfastly failed to challenge that certification by submitting its request for a legal determination of the initiative petition's sufficiency. *See* §§ 2, 3, and 4 of Act 877. Under Act 877, taxpayers must petition the Secretary of State for a sufficiency review, and until they first do so, our court does not have jurisdiction regarding the ballot title and popular name issues.

Once again, as this court noted in *Stilley II*, I must point out that in the past twelve years, at least eight measures have been stricken from the ballot at the eleventh hour before the November general election owing to an alleged deficiency in the text of the proposed ballot title. In conclusion, I must say that this court's decision is returning to the law that, once again, fosters last-minute rulings that allow little time for this court to seriously consider whether a ballot title is valid and whether the ballot title in question should be removed from the voters' ballots. In doing so, the

court ignores its decisions in *Stilley I, Stilley II, Roberts,* Act 877, and the language in Amendment 7 itself, and improperly instructs us to read Amendment 7 and its enabling law in a restrictive manner. Such a construction of Amendment 7 subverts its real purpose, which is to allow the people of Arkansas to initiate laws and to give the voters an opportunity to decide whether or not such proposals have merit. The majority is returning us to the interpretation of Amendment 7 this court adopted in *Finn,* and it will serve only to thwart the citizens' rights to initiate laws and vote on them.

After ending my analysis of the majority opinion, the concurring opinion of Justice Hannah must be briefly addressed, since he raises an issue never mentioned by any party until he raises it now. The relevant part of his opinion reads as follows:

> In 2000, the citizens passed Amendment 80, which gives the supreme court "[o]riginal jurisdiction to determine sufficiency of State initiative and referendum petitions and proposed constitutional amendments." The purpose of drafting Amendment 80 to give the supreme court original jurisdiction in these matters was to provide the supreme court the vehicle by which it could address the frustrating problem of last minute challenges to ballot proposals and the lack of time to correct the deficiencies. *The citizens were told by the proponents of Amendment 80 that avoiding last minute challenges to ballot proposals was one of the things Amendment 80 would accomplish.* With the passage of Amendment 80, this court now has the opportunity to fashion the vehicle by which those who invest so much time and money in obtaining the signatures will have a reasonable and timely opportunity to correct any deficiencies in order to keep their proposal on the ballot.
>
> Amendment 7 provided for review in this court after the issue of sufficiency had been decided by the Secretary of State. Amendment 80 alters this and simply provides for jurisdiction of the issue of sufficiency in this court. There is no mention in Amendment 80 of any involvement of the Secretary of State. (Emphasis added.)

First, I respectfully point out that, contrary to Justice Hannah's assertion, there is nothing in the record to reflect the citizens were told by the proponents of Amendment 80 that avoiding last-minute challenges to ballot proposals was one of the things

Amendment 80 would accomplish. Where this idea or thought comes from, I do not know, nor does the concurring opinion say.

Second, Amendment 80's terms suggest that it repeals Amendment 7, but the law is well settled that repeals by implication are not favored. In fact, Amendment 7 and Amendment 80 may be construed harmoniously since both amendments give the supreme court original and exclusive jurisdiction over initiative and referendum measures. Most important on this point, the Repealer Clause of Amendment 80 makes no mention of Amendment 7, and, in fact, specifically provides that no other provision of the Constitution of the State of Arkansas shall be repealed by this Amendment unless the provision is in irreconcilable conflict with its provisions. *See,* section 22 of Amendment 80 to the Arkansas Constitution. The interpretation given Amendment 80 by the concurring opinion is, in a word, "wrong."

Third, the parties to this suit have not mentioned this Amendment 80 argument put forth by Justice Hannah's concurring opinion. Serious constitutional arguments should be fully researched, briefed, and argued before they are addressed.

CORBIN and BROWN, JJ., join this opinion.

ROBERT L. BROWN, Justice, dissenting. The petitioner in this case, Harry Ward, individually and on behalf of Arkansans to Protect Police, Libraries, Education & Services (APPLES), failed to comply with the statutory requirements for contesting a popular name, ballot title, and amendment. I would dismiss his petition for lack of subject-matter jurisdiction in this court due to this failure to comply with those requirements. Hence, I would not review the merits of this case. For that reason, I dissent.

Act 877 of 1999, now codified at Ark. Code Ann. §§ 7-9-501 through 506 (Repl. 2000), declares that its purpose "is to provide for the timely and expeditious review of the legal sufficiency of initiative petitions by the Supreme Court." Ark. Code Ann. § 7-9-501 (Repl. 2000). In describing the procedure for contesting the legal sufficiency of a ballot title, section 2 of Act 877, now codified at § 7-9-503, provides:

(a)(1) Any Arkansas taxpayer and voter may submit a written petition to the Secretary of State requesting the determination of legal sufficiency of statewide initiative petitions.

(2) The *petitioner* shall notify the *sponsor* of the measure of the petition for determination by certified mail on the date that it is submitted to the Secretary of State.

(b) Within thirty (30) days after receipt of the petition for determination, the Secretary of State shall decide and declare, after consultation with the Attorney General, questions on one (1) or both of the following issues:

(1) Whether the popular name and the ballot title of the measure are fair and complete; and

(2) Whether the measure, if subsequently approved by the electorate, would violate any state constitutional provision or any federal constitutional, statutory, or regulatory provision or would be invalid for any other reason.

(c) The declaration shall be in writing and shall be mailed to the *petitioner* and the *sponsor* of the measure by certified mail on the date that it is issued.

(d) The scope of review authorized by this subchapter shall be strictly limited to the questions referred to in subsection (b) of this section and shall not include questions regarding the sufficiency or validity of signatures on the initiative petitions.

Ark. Code Ann. § 7-9-503 (Repl. 2000) (emphasis added).

Not one of the requirements set out in Act 877 was followed by Ward in this case:

- Ward failed to file a petition with the Secretary of State requesting a determination of legal sufficiency.

- The sponsor (ALERT) was not notified of such a petition.

- The Secretary of State never consulted with the Attorney General about legal sufficiency.

- There was no declaration by the Secretary of State that the initiative was fair and complete and would not violate the State or Federal Constitution or State statutes.

- No declaration of legal sufficiency by the Secretary of State was mailed to the sponsor (ALERT).

In the face of all this, counsel for Ward and APPLES, made the surprising announcement at oral argument that a legal sufficiency declaration had been made by the Secretary of State on September 10, 2002. But that simply is not the case. What did occur on that date is the *sponsor* (ALERT) received a certification that the *signature requirements* had been met.[1] That certification from the Secretary of State read:

> I, Sharon Priest, Secretary of State, State of Arkansas, do hereby certify that the petition submitted for the proposed
>
> An Amendment Eliminating Taxes on Food and Medicine,
>
> has met the signature requirements and the requirements of Amendment 7 of the Arkansas Constitution in order to place an initiative on the Arkansas General Election Ballot of November 5, 2002.

There was no confusion on this point. Ward's own petition admits this: "On September 10, 2002, Respondent [Secretary of State] declared that the petition contained a sufficient number of signatures of registered voters and certified the Amendment to appear on the November 5, 2002 general election ballot." There is nothing in Ward's petition filed in this court to suggest that the Secretary of State had declared the initiative *legally* sufficient. She made no declaration that it was fair and complete, constitutional, and in compliance with state statutes. And, again, the procedures for a legal-sufficiency determination were simply not followed, as required by Act 877. To argue that notice to the *sponsor* that sufficient signatures had been obtained equates to a declaration to a *petitioner* that the ballot title is legally sufficient is an illogical and impermissible stretch.

There is also the point that sponsors like ALERT would not be challenging the legal sufficiency of their own ballot titles and amendments. That would be absurd. Such an interpretation flies in the face of the very language of Act 877, which takes pains to distinguish between the *sponsor* of the initiative and the *petitioner*

---

[1] A sponsor is defined as "a person or group of persons filing an initiative or referendum petition with the Secretary of State." Ark. Code Ann. § 7-9-101(8) (Repl. 2000).

challenging the initiative. This distinction is made in two places in Act 877, as highlighted above. *See* Ark. Code Ann. § 7-9-503(a)(2) and (c) (Repl. 2000). Again, what the Secretary of State told the sponsor, ALERT, on September 10, 2002, had nothing to do with a legal-sufficiency declaration requested by a petitioner but rather was a certification to the sponsor that the signatures were sufficient.

Nor is Act 877 permissive, as the majority would have it. Nowhere in the Act is there any indication given that the following language merely provides an alternative procedure to Amendment 7:

> (a)(1) Any Arkansas taxpayer and voter may submit a written petition to the Secretary of State requesting the determination of legal sufficiency of statewide initiative petitions.

Ark. Code Ann. § 7-9-503(a)(1) (Repl. 2000). What this language manifestly does is provide the *authority* for a taxpayer and voter to challenge the legal sufficiency of an initiative by petition. This does not mean that the Act 877 process is yielding in any respect to the tired, old way of doing business with last minute challenges filed in this court under Amendment 7. The whole purpose behind Act 877 was to remedy that problem, and it did so.

In a landmark decision in 2000, which was hotly debated among the justices of this court, we upheld the constitutionality of Act 877 and concluded that it did not conflict with Amendment 7 to the Arkansas Constitution but "facilitated" the Amendment 7 process for determining the legal sufficiency of initiatives. *See Stilley v. Priest*, 341 Ark. 329, 16 S.W.3d 251 (2000) (*Stilley II*). We stated that Amendment 7 contemplated sufficiency determinations by the Secretary of State on signatures as well as legality. It is true that in that case, the petition for a declaration of legal insufficiency had been filed before the gathering of signatures. But whether a petition for legal insufficiency is filed before or after the gathering of signatures is irrelevant under Act 877, as that Act makes no such distinction. Whatever the time the petition is filed contesting the ballot title and amendment, the procedures of Act 877 must be complied with, and that was not done in this case.

The result of today's decision is that for all intents and purposes Act 877 has been eviscerated, and we are back to the pre-Act 877, frenzied practice of ballot-title challenges being filed just days before an election. Petitions contesting ballot initiatives at the eleventh hour on unfair, incomplete, or illegal grounds will, once again, become commonplace, after the sponsor has collected the required signatures. Act 877 will be tossed aside for late challenges, which means the whole reason for Act 877's being has been abandoned. And this court will not have the benefit of a review of legal sufficiency of the ballot title and amendment by the Secretary of State in consultation with the Attorney General.

A challenge at the last minute is precisely what this court has tried to avoid for many years. In fact, this court specifically called on the General Assembly to rectify the situation in at least two cases. *See Scott v. Priest*, 326 Ark. 328, 932 S.W.2d 746 (1996) (emphasizing again our earlier request for the General Assembly to attempt to establish an initiative procedure that would permit early resolution of ballot-title issues); *Page v. McCuen*, 318 Ark. 342, 884 S.W.2d 951 (1994) (encouraging the General Assembly to make another attempt to establish an initiative procedure for early resolution of ballot-title issues). The General Assembly did so with the enactment of Act 877. In doing so, it spoke for the people of this State who chafed at last minute petitions, which often resulted in issues being struck from the ballot mere days before the election.

The majority opinion simply unravels what has been accomplished over the past three years and breathes new life into the once-defunct system of last minute ballot challenges. Not only has the majority retrenched, gutted Act 877, and overruled *Stilley II*, which requires Act 877 adherence, it has also treated petitioners in other cases differently. *See, e.g., Stilley v. Priest*, 340 Ark. 259, 12 S.W.3d 189 (2000) (*per curiam*) (*Stilley I*). In *Stilley I*, we required Stilley, as a petitioner, to jump through the Act 877 procedural hoops. He had not done so, and we said that was a prerequisite to our review. Today, we do not require Ward to do the same. The majority's explanation is that Ward is not required to comply with Act 877, because he filed a petition *after* signatures had been gathered. Again, Act 877 does not make this pre-signa-

tures/post-signatures distinction that the majority has crafted. Nor does Amendment 7. In short, the majority's conclusion that Act 877 does not apply to post-signature petitions has no basis in reality. There is nothing in Act 877 to remotely suggest that.

But Act 877 is now history, and eleventh-hour challenges, after signatures have been collected, are back in vogue. That is a terrible turn of events, not only for the ballot title before us today but for future ballot-title contests. I would dismiss the Ward petition for lack of subject-matter jurisdiction in this court and not address whether the popular name and ballot title for this amendment adequately inform the voting public.

GLAZE and CORBIN, JJ., join.

JIM HANNAH, Justice, concurring in part; dissenting in part. I concur with the majority that this court has jurisdiction. Further, nobody agrees more than I do with the concern expressed in the dissents about last minute ballot challenges. Those opposed to proposed amendments have developed the disagreeable practice of challenging the ballot title and popular name so late in the election cycle that if they prevail, there is no time to remedy any problems. In this way, they thwart the whole purpose of Amendment 7 and force this court to decide the matter on the eve of the election. Those who have invested time and money in getting amendments on the ballot understandably feel frustrated and angry, and they should. However, under the terms of Amendment 80 this court now has original jurisdiction over petitions challenging sufficiency, and authority to issue rules controlling petitions challenging sufficiency of statewide petitions under Amendment 7. The judicial article, prior to Amendment 80, did not give the supreme court original jurisdiction of initiative and referendum petitions and proposed constitutional amendments. The supreme court's jurisdiction in these matters was found in Amendment 7. In 2000, the citizens passed Amendment 80, which gives the supreme court "[o]riginal jurisdiction to determine sufficiency of State initiative and referendum petitions and proposed constitutional amendments." The purpose of drafting Amendment 80 to give the supreme court original jurisdiction in these matters was to provide the supreme court the vehicle by

which it could address the frustrating problem of last-minute challenges to ballot proposals and the lack of time to correct the deficiencies. The citizens were told by the proponents of Amendment 80 that avoiding last minute challenges to ballot proposals was one of the things Amendment 80 would accomplish. With the passage of Amendment 80, this court now has the opportunity to fashion the vehicle by which those who invest so much time and money in obtaining the signatures will have a reasonable and timely opportunity to correct any deficiencies in order to keep their proposal on the ballot.

Amendment 7 provided for review in this court after the issue of sufficiency had been decided by the Secretary of State. Amendment 80 alters this and simply provides for jurisdiction of the issue of sufficiency in this court. There is no mention in Amendment 80 of any involvement of the Secretary of State.

With regard to sufficiency, Amendment 7 provided:

> The sufficiency of all State-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes.

Amendment 80, however, provides:

> (D) The Supreme Court shall have: . . .

> (4) Original jurisdiction to determine sufficiency of State initiative and referendum petitions and proposed constitutional amendments;

Amendment 80 omits any reference to sufficiency being decided in the first instance by the Secretary of State. This conflict raises an issue of constitutional interpretation. In *Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001), this court stated:

> In interpreting the language of a provision of the Arkansas Constitution, we endeavor to effectuate as nearly as possible the intent of the people in passing the measure. *Allred v. McLoud*, 343 Ark. 35, 31 S.W.3d 836 (2000). Where the language of the constitutional provision is plain and unambiguous, each word must be given its obvious and common meaning. *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000); *Daniel v. Jones*, 332 Ark.

489, 966 S.W.2d 226 (1998). "Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision." Id. at 499, 966 S.W.2d at 231 (quoting *Foster v. Jefferson County Quorum Court*, 321 Ark. 105, 108, 901 S.W.2d 809, 810 (1995)).

*Harris*, 344 Ark. at 99. The former law provided that a challenge to sufficiency had to be brought first to the Secretary of State, and then the decision there was subject to review in this court. The law now provides challenges are to be brought in this court. Amendment 80 is the later amendment and prevails. *Wright v. Storey*, 298 Ark. 508, 769 S.W.2d 16 (1989). This issue of later amendments was discussed in greater detail in *Chesshir v. Copeland*, 182 Ark. 425, 32 S.W.2d 301 (1930), cited by the court in *Wright, supra*. In *Chesshir, supra*, this court stated:

> It is a rule of universal application that the Constitution must be considered as a whole, and that, to get at the meaning of any part of it, we must read it in the light of other provisions relating to the same subject. The general rule is that constitutional provisions and amendments thereto must be harmonized where practical. If there is to some extent an inconsistency or repugnancy between a provision of the Constitution and an amendment thereto, so that one or the other must yield, the amendment being the last expression of the Sovereign will of the people will prevail as an implied repeal to the extent of the conflict. The same rule of construction would apply in the construction of amendments. The later amendment would govern to the extent that it was repugnant to or in conflict with the provisions of the former one. *Little Rock v. North Little Rock*, 72 Ark. 195, 79 S.W. 785; *Ferrell v. Keel*, 105 Ark. 386, 151 S.W. 269; *State ex rel. v. Donaghey*, 166 Ark. 56, 152 S.W. 746; *Grant v. Hard age*, 166 Ark. 506, 153 S.W. 269; *Babb v. El Dorado*, 170 Ark. 10, 278 S.W. 649; *Lybrand v. Wafford*, 174 Ark. 298, 296 S.W. 729; *Polk County v. Mona Star Company*, 175 Ark. 76, 298 S.W. 1602; and *Lake v. Tatum*, 175 Ark. 90, 1 S.W.2d 554. The principle of constitutional construction above laid down has been uniformly adhered to and applied according to the varying facts of the different cases.

*Chesshir*, 182 Ark. at 429.

Under Amendment 7 as it was originally passed by the voters, there was nothing this court could do with regard to sufficiency until the question had been presented to the Secretary of State. "Until the Secretary of State shall have acted upon the sufficiency of the petition and his action therein shall have been properly challenged, we have nothing to review." *Rambo v. Hall*, 195 Ark. 502, 112 S.W.2d 951 (1938). Now under Amendment 80, original jurisdiction to determine sufficiency lies in this court.

Discussion of Act 877 of 1999, is superfluous. It is in conflict with and therefore was displaced by Amendment 80. An existing statute is superseded by a subsequent constitutional amendment when there is an irreconcilable conflict or the statute is necessarily repugnant to the new constitutional provision. *McKenzie v. Burris*, 255 Ark. 330, 500 S.W.2d 357 (1973); *see also, Priest v. Mack*, 194 Ark. 788, 109 S.W.2d 665 (1937). Thus, in the present case, this court has jurisdiction.

I must also respectfully dissent because although the challenge to the sufficiency of the ballot title was brought late, there is merit to the claim that it is misleading and confusing. In *Westbrook v. McDonald*, 184 Ark. 740, 44 S.W.2d 331 (1931), this court discussed its obligation under Amendment 7 to consider on a challenge to sufficiency whether the ballot title is sufficient and whether it is misleading. This court has been undertaking such an analysis ever since. *See, e.g., White v. Priest*, 348 Ark. 135, 73 S.W.3d 572 (2002).

The ballot measure is one to abolish taxes on food and medicine. Although the idea is arguably a simple one, the definitions of food and medicine in the ballot title are not. The ballot title provides:

> AN AMENDMENT TO THE ARKANSAS CONSTITU-
> TION, ABOLISHING AND PROHIBITING TAXATION
> ON FOOD AND MEDICINE; DEFINING "FOOD" TO
> MEAN "ANY ITEM THAT WAS ELIGIBLE FOR
> PURCHASE WITH FEDERAL FOOD STAMPS ON APRIL
> 1, 2001 OR IS OTHERWISE AVAILABLE UNDER ANY
> STATE OR FEDERAL NUTRITION ASSISTANCE PRO-

GRAM EXISTING ON APRIL 1, 2001;" DEFINING "MEDICINE" TO MEAN "ANY ITEM BEING FURNISHED OR AVAILABLE AT A REDUCED COST UNDER ANY STATE OR FEDERAL HEALTH CARE ASSISTANCE PROGRAM ON APRIL 1, 2001. . .

The idea of abolishing taxes on food and medicine seems like a simple one until one reads the ballot title. What the voter will likely think the vote is about is whether we should be taxing the necessities of life. When we think of food, we think of substance that we take into our body for nourishment. That is pretty simple. When we think of medicine, we think of substances we take into our body to make us well. That is pretty simple. But, once the ballot title is read, one must wonder just what will and what will not be taxed. The definition of food might be argued to be broader than the necessities of life, but then it might be more narrow. I know that I cannot tell you by reading the ballot what food and what medicines will not be taxed. I do not believe the reasonable voter could tell either. In oral argument, counsel for the intervenors, who were the proponents of the ballot measure, was asked whether over-the-counter medicine would be taxed. He responded as follows:

> Any time anyone tries to draw a definition of anything, a capable lawyer can quibble with that definition at the margins. That, I think, we have to concede. This is a definite definition. If anyone wants to know whether Pedialyte or Pepto-Bismol, which are two of the examples that the petitioner has raised, are covered items as of 2001, April 1, 2001, we can find out the answer. I can't tell you what the answer is here today, Justice Brown, because I don't know. The point is, we can determine that answer with certainty. That is not a material issue for voters in the voting booth.

If the lawyer for Intervenors cannot tell what medicines would be exempt from the sales tax, the average person certainly could not know. Most people would likely be surprised to find there was an issue of whether Pedialyte would or would not be taxed. Pedialyte would seem to be one of the most simple forms of medication a parent might seek when a child is ill, and yet it may or may not be

taxable. To say the definitions chosen by the proponents are complex only partially addresses the issue. Even assuming the definitions are finite, they are not contained in the ballot title, but rather the voter is referred to a number of federal and State programs. In essence, in the ballot title, the voter is told to vote for this measure and those items provided under food stamps or state or federal nutrition programs will not be taxed. The voter is further told to vote for this measure and any item furnished under federal and State health programs will not be taxed. It is arguably far from a ban on taxation of food and medicine. It may be far more, or it may be far less.

A ballot title must comply with certain requirements. In *Stilley v. Priest*, 341 Ark. 329, 16 S.W.3d 251 (2000), this court stated:

> We have held that a ballot title must be free from a misleading tendency. *Bailey v. McCuen, supra; Plugge v. McCuen*, 310 Ark. 654, 841 S.W.2d 139 (1992). We have further held that a ballot title must be intelligible, honest, and impartial so as to inform voters with such clarity that they can cast their ballots with a fair understanding of the issues presented. *Parker v. Priest, supra; Bailey v. McCuen, supra*. If information is omitted from the ballot title which is an essential fact which would give the voter serious ground for reflection, it must be disclosed. *Parker v. Priest, supra; Bailey v. McCuen, supra*. Finally, we have held that we are liberal in construing Amendment 7 and in determining the sufficiency of a ballot title. *Bailey v. McCuen, supra; Porter v. McCuen*, 310 Ark. 562, 839 S.W.2d 512 (1992).

This ballot title is misleading and unintelligible. It is insufficient to inform the voter. It is to the ballot title that the voters may look to ascertain whether what they are asked to approve. *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998). A voter is also entitled to be informed by plain language. *Daniel, supra*. Voters cannot be required to refer to statutes or an act. *Daniel, supra*. Here, the voter is required to do just that, to look at definitions in federal and State programs. Further, the ballot title is far from plain language where a voter is referred to multiple federal and State programs to understand what is and what is not going to be

taxed. Where a ballot title is misleading and confusing, this court must find it insufficient. It is unfortunate this challenge has been made so late in the election cycle, but that does not alter this court's duty. That problem, however, may now be addressed in future cases by this court under Amendment 80. Rules should be promulgated that stop last minute ballot title challenges. However, in this case, the petition should be granted.

HOLT, Special Justice, joins.

JACK HOLT, JR., Special Justice, concurring that this court has jurisdiction and dissenting as to the sufficiency of the ballot title.

I agree with the majority that this court has jurisdiction under Amendment 7.

I share the concerns and sentiments of all members of this court as expressed in their written opinions as to the chaotic proceedings that take place in submitting a proposed amendment on the ballot for a vote of the people. Surely, these procedures may be made clear by future constitutional amendments, appropriate legislation, or by court rule.

Jurisdiction of this court is well grounded in Amendment 7 and more recently in Amendment 80 (approved by the voters in 2000), as set out by Justice Hannah in his concurring opinion. Likewise, the discussion of Act 877 is superfluous. It is permissive, not mandatory. It provides an optional approach to the determination of the legal sufficiency of a popular name and ballot title, not the sufficiency of the petition itself which embraces popular name, ballot title, and signature requirements.

In this instance certification as to the signature requirements and the requirements of Amendment 7 to place the amendment on the ballot was made by the Secretary of State on September 10, 2002. Petition for review was timely filed on September 12. This court has jurisdiction.

The ballot title does not pass muster. Thus I respectfully dissent to the plurality opinion. Rather than embellish on Justice

Hannah's writings in this regard, which I adopt, I merely add the following:

> It has long been regarded as axiomatic that the majority of voters, when called upon to vote for or against a proposed measure at a. general election, will derive their information about its contents from an inspection of the ballot title immediately before exercising the right of suffrage. *Id.; Hoban v. Hall*, 229 Ark. 416, 316 S.W.2d 185 (1958); *Westbrook v. McDonald*, 184 Ark. 741, 43 S.W.2d 356 (1931). This, indeed, is the purpose of the ballot title. *Dust v. Riviere, supra; Hoban v. Hall, supra.*

*Christian Civic Action Comm. v. McCuen*, 318 Ark. 241, 244, 884 S.W.2d 605 (1994).

In *Dust v. Riviere*, 277 Ark. 1, 4, 638 S.W.2d 663 (1982) we held that "[the voters] are allowed to make an intelligent choice, fully aware of the consequences of their vote." *Dust, supra.*

In *Kurrus v. Priest*, 342 Ark. 434, 452, 29 S.W.3d 669 (2000), we stated:

> This court has repeatedly held that the central question in resolving ballot title issues is whether the voter is able to reach an intelligent and informed decision and to understand the consequences of his or her vote. *See, e.g., Roberts v. Priest*, 341 Ark. 813, 20 S.W.3d 371 (2000); *Christian Civic Action Comm. v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994).

*Kurrus, supra.*

There is no way the voters can examine this ballot title and make an informed decision, or be fully aware of the consequences of their vote. In order to determine what is meant by the words "food" and "medicine," voters are referred to definitions contained in federal food stamp programs and state and federal nutrition programs. Mere reference to these programs do not provide sufficient information for the voters to make an informed decision on what food and what medicines will not be taxed. In short, the ballot title as written does not allow the voters to make an intelligent choice, fully aware of the consequences of their vote.

HANNAH, J., joins.