TOWNSEND *v.* McDONALD.

Opinion delivered October 5, 1931.

*A. J. Russell, Osro Cobb, Sam M. Clark, A. J. Russell, Jr.,* and *Robert A. Zebold,* for appellant.

*Hal L. Norwood,* Attorney General, for appellee.

HART, C. J. Wallace Townsend, for himself and other legal voters, seeks by mandamus to compel Ed. F. McDonald, as Secretary of State, to file a petition for a referendum on act 345 passed by the last Legislature. Act 345 is entitled "An act to provide for the creation of county boards of election commissioners and the appointment of election judges and clerks." Acts of 1931, p. 1117. The Secretary of State refused to file the petition because there was not a full and correct copy of the act attached to it.

Our Initiative and Referendum Amendment to the Constitution was adopted at the general election in 1920, and the text of it may be found in the Acts of 1919 at page 481 and in Applegate's Constitution of Arkansas Annotated at page 203. The amendment commences as follows: "That § 1 of article 5 to the Constitution of the State of Arkansas and Amendment No. 10 thereto be amended so as to read as follows." Then follows the complete text of the amendment. It provides that the second power reserved by the people is the referendum, and any number, not less than six per cent. of the legal voters, may, by petition, order the referendum against any general act or any item of an appropriation bill, or measure passed by the General Assembly, etc. The amendment concludes as follows:

"SELF-EXECUTING. This section shall be self-executing, and all its provisions shall be treated as mandatory, but laws may be enacted to facilitate its operation. No legislation shall be enacted to restrict, hamper or impair the exercise of the rights herein reserved to the people."

"That this Amendment to the Constitution of the State be, and the same shall be in substitution of the Initiative and Referendum Amendment, approved February 19, 1909, as the same appears in the Acts of Arkansas for 1909, on pages 1239 and 1240 of the volume containing the same; and that the said amendment (and the act of the General Assembly to carry out the same, approved June 30, 1911, so far as the same is in conflict herewith), be and the same are hereby repealed."

The original amendment providing for the Initiative and Referendum above referred to provides that the referendum may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety) either by petition signed by five per cent. of the legal voters or by the legislative assembly as other bills are enacted. The amendment concludes as follows: "Petitions and orders for the Initiative and for the Referendum shall be filed with the Secretary of State, and in submitting the same to the people he and all other

officers shall be guided by the general laws and the acts submitting this amendment until legislation shall be specially provided therefor." Acts of 1909, p. 1238.

Pursuant to the power given by the clause of the amendment to the Constitution just quoted, the Legislature of 1911 passed an act the title of which reads as follows: "An act to provide for carrying into effect the initiative and referendum powers reserved by the people in Amendment No. 10, to the Constitution of the State of Arkansas on general county and municipal legislation, to regulate elections thereunder and to punish violations of this act." Acts of 1911, p. 582. Section 2 of the act provides the form for the petition and order for a referendum and is § 9766 of Crawford & Moses' Digest. Section 7 of the act provides for printed copies of measures referred to be attached to the petition and is § 9768 of Crawford & Moses' Digest, which reads as follows:

"Copy of measure to be attached. To every petition for the initiative shall be attached a full and correct copy of the title and the measure proposed, and to every petition for the referendum shall be attached a full and correct copy of the measure on which the referendum is ordered. The Secretary of State shall cause every measure approved by the people to be printed with the general laws enacted by the next ensuing session of the General Assembly with the date of the Governor's proclamation declaring the same to have been approved by the people."

The general rule of construction applicable to constitutional amendments is that the later amendment governs to the extent that it is repugnant to or in conflict with the provisions of the former one. *Chessir* v. *Copeland,* 182 Ark. 425, 32 S. W. (2d) 301, and cases cited.

At the outset, it may be stated, that substance is more to be desired than form; and the will of the people, as expressed in the amendment, should be declared according to the plain and ordinary words used unless another and different meaning has been plainly expressed. It will be noted that the amendment provides that it shall be in substitution of the Initiative and Referendum

Amendment approved February 9, 1909, and that said amendment and the act of the General Assembly to carry out the same approved June 30, 1911, so far as the same is in conflict herewith, be and the same are hereby repealed. This manifestly indicates the will of the people to leave in force the act of the General Assembly approved June 30, 1911, which was for the purpose of carrying out the original amendment, except in so far as it is repugnant to or in conflict with the present amendment. It also indicates a purpose on the part of the people to authorize the Legislature to adopt a procedure in harmony with the amendment to carry out its provisions. Otherwise the amendment itself would have declared that the act of the General Assembly referred to was repealed. Section 9768 of the Digest, which is § 7 of the act of 1911, expressly provides that to every petition for the initiative shall be attached a full and correct copy of the title and measure proposed, and to every petition for the referendum shall be attached a full and correct copy of the measure on which the referendum is ordered. There is nothing in the section which is in conflict with or repugnant to the provisions of the constitutional amendment.

The purpose of the section with regard to petitions for initiative measures is clear. The people could not intelligently act on an initiative measure unless a copy of the measure itself was before them. The same reasoning would obtain in cases of a measure referred to the people. A full and correct copy of the measure attached to the petition would enable the signer thereto to act intelligently in the premises. Of course, he would not be required to read the measure, but it would be his duty to inform himself of its contents, and this would be a certain way for the signer to know that a different petition would not be presented from that signed by him. The signer would know that he was signing the measure passed by the Legislature and was not taking the opinion of any one else as to the meaning of it. Otherwise, those in charge of the petition, either designedly or ignorantly, might inform the petitioners that the meaning of the bill

proposed to be referred was essentially and substantially different from the one actually passed by the Legislature. If a full and correct copy of the bill is attached to the petition, the voter can decide that question for himself. Hence, a majority of the court is of the opinion that the requirement is clearly jurisdictional, and that the Secretary of State is without power to act in the absence of a substantial compliance with this requirement of the statute.

In determining whether the words of a statute shall have a mandatory or directory effect ascribed to them, the purposes of the act, the end to be accomplished, the consequences that may result from one meaning or the other, and the context are to be considered. The statute relates to the limits of the power of the Secretary of State to file the petition, which was not in compliance with the requirements of the statute, and does not relate to the manner in which the power is to be exercised. *Phillips* v. *State,* 162 Ark. 541, 258 S. W. 403.

The statute was not passed as a mere matter of convenience or direction to be observed either by those circulating the petitions or by the Secretary of State. The act was passed as a safeguard to the rights of the voters to whom the petition was offered for signature. The requirement was intended to secure the voters whose interests were to be affected an opportunity to know what they were signing, and to know that they were not signing something different from those whose signatures appeared on the petition. This is a right of great benefit to the voters, and we do not think the requirement should be regarded as merely directory, but that it is a substantial right which is of a mandatory character, and must be complied with or the proceeding will be void.

In short, a majority of the court is of the opinion that the provisions of the act of 1911 above referred to are not repugnant to any of the provisions of the amendment under consideration, and that there is nothing in it which restricts or impairs the exercise of the rights reserved to the people by the amendment. If the framers

of the amendment had thought otherwise, as above stated, the simple and natural thing to have done would have been to declare that the act of June 30, 1911, was repealed, and not merely that it was repealed in so far as it conflicted with the provisions of the later amendment to the Constitution.

We do not think there is anything in the case of *State ex rel.* v. *Olcott,* 62 Ore. 277, 125 Pac. 303, that is in conflict with this holding; but, on the contrary, we think that the decision in the present case is in harmony with that case. The court there held that, if the petition for referendum substantially complied with the requirements of the law, that was all that was necessary. The court held that it was not necessary to have a full and correct copy of the title and text of the measure proposed attached to each sheet of the petition. This would make each sheet a separate petition and would be putting form above substance. No matter how many signers there are to a petition and how many sheets are used, they are pasted together and become a constituent part of the same petition. It is only necessary that a full and correct copy of the measure on which the referendum is asked be filed with the petition and attached thereto, in order that the petitioners may have the opportunity to read it and inform themselves as to the act to be referred before signing the petition, if they wish to do so.

Therefore, it is ordered that the petition for mandamus be dismissed.

Mr. Justices SMITH, HUMPHREYS and KIRBY, dissent.