Bob PORTER, on Behalf of Himself and All Others
Similarly Situated; and Arkansas Executive Committee *v.*
W.J. "Bill" McCUEN, Secretary of State

Coalition for a Healthier Arkansas, Inc.,
*Intervening Respondent*

92-940                                          839 S.W.2d 512

Supreme Court of Arkansas
Opinion delivered October 9, 1992

*Friday, Eldredge & Clark,* by: *Paul Benham III*, for petitioners.

*Winston Bryant*, Att'y Gen., by: *Ann Purvis*, Asst. Att'y Gen., for respondent.

*Mitchell, Blackstock & Simmons*, by: *Clayton R. Black-stock,* for intervening respondent.

STEELE HAYS, Justice. This is an original action by Bob Porter, on behalf of himself and all others similarly situated, and Arkansas Executive Committee (Petitioners), against W.J. "Bill" McCuen, Secretary of State (Respondent). Petitioners seek an order invalidating a proposed initiated act offered under Amendment 7 to the Arkansas Constitution. The measure, if adopted by the electorate, would increase excise taxes on cigarettes and other tobacco products in Arkansas.

Petitioners challenge the ballot title (Court I) and the

sufficiency of the initiative petition and the validity of a number of the signatures thereon (Count II). Petitioners seek an expedited handling of the case, the appointment of a Master to take evidence and make findings, and for an injunction against the measure appearing on the ballot at the general election on November 3, 1992.

Soon after the action was filed the organization sponsoring the measure, COALITION FOR A HEALTHIER ARKANSAS (CHAR), moved to intervene and to offer evidence in support of the validity of signatures challenged by petitioners. Intervention was granted, the Honorable Gerald P. Brown was appointed Master and the parties are now engaged in presenting proof on the factual issues relative to Count II.

To further expedite the processing of this case in the face of the impending election, the factual issues of Court II were severed from the nonfactual issues involving the ballot title (Count I) and briefs on that count were submitted to us on October 5, 1992.

Before turning to the specifics of petitioners' attack on the ballot title, we mention that in determining the sufficiency of ballot titles under Amendment 7 we give a liberal construction and interpretation to the requirements of that provision consistent with its intent to reserve to the people a right to adopt, reject, approve or disapprove legislation. *Fletcher* v. *Bryant*, 243 Ark. 864, 422 S.W.2d 697 (1968). We also recall that a ballot title is sufficient if it identifies the proposed act and fairly alleges the general purpose thereof, and it need not be so elaborate as to set forth the details of the act. *Coleman* v. *Sherill*, 189 Ark. 843, 75 S.W.2d 248 (1934).

Petitioners allege the ballot title is misleading, incomplete, deceptive and otherwise defective. Their primary complaint concerns the removal of a segment of the text of the proposed measure prior to circulation and after the Attorney General had inspected the proposal pursuant to Ark. Code Ann. § 7-9-107(a) (Repl. 1991). That statute reads in part:

> Before any initiative or referendum petition ordering a vote upon any amendment or act shall be circulated for obtaining signatures of petitioners, the sponsors shall submit the original draft to the Attorney General, with a

proposed legislative or ballot title and popular name.

Additionally, petitioners rely on Ark. Code Ann. § 7-9-106(a) (Repl. 1991) which provides:

> To every initiative petition for the initiative shall be attached a full and correct copy of the title and the measure proposed.

Petitioners contend that after the Attorney General had revised and approved the ballot title and returned it and the original draft of the text to the act as required under § 7-9-107, CHAR removed a segment from the text of the proposed act and it was this "sanitized" version that was circulated with the initiative petitions. The paragraph in question reads as follows:

> (As the current 21 cent tax raises 60 Million, another 25 cents should raise about 74.29 Million. However, based on the Canadian experience, for every 10% increase in price, there will be an approximately 4% reduction in sales (some say only 2%). So, based on a current retail price of $1.60, the 25 cent tax increase may raise only 67.9 Million. Less the 3% for the Constitutional Officers Fund and the State Central Services Fund, the Accounts projections are as follows:

> (1) Health Education Account — 15% — $9.9 Million

> (2) Medical Services Account — 50% — $33 Million

> (3) Senior Services Account — 20% — $13.2 Million

> (4) Children Services Account — 10% — $6.6 Million

> (5) Disease Surveillance and Research Account — 5% — $3.3 Million

> 4% is a conservative estimate — the demand may only drop 2%.

Petitioners maintain the petitions should not have been circulated for signatures when the text of the proposal differed from the draft submitted to the Attorney General for approval and the Attorney General failed to include any reference to this

paragraph in the ballot title. They contend that when § 7-9-107 and § 7-9-106(a) are read together, the law does not permit a sponsor to submit one version to the Attorney General and a different version to the public.

■ We might agree if there were any materiality to the deleted segment. But we find none. It is an unnumbered, parenthetical aside in the nature of an editorial comment. It does not legislate or affect the proposed measure one way or the other. It is a mere appendage tacked on after the repealing clause which, from all appearances, was not intended to be any part of the measure. Indeed, that is how the Attorney General saw it and simply ignored it when revising and approving the ballot title. We regard it as nothing more than a projection of what might be generated in the way of increased revenues and should never have been included in the first place.

■ Next, Petitioners submit that the ballot title omits reference to the intent of the proposed measure to reduce tobacco consumption which would in turn reduce tax revenues. We find little merit here. We believe it can be assumed that voters are capable of recognizing a correlation between taxation levels and diminishing consumption. It isn't necessary to spell out every aspect of an initiative in the ballot title. *Ferstl* v. *McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988).

■ Another contention involves the tax rate on "other tobacco products." Petitioners complain that the ballot title is deficient in that it declares the tax to be ". . . . in an amount equivalent to the combined rate of tax on cigarettes prescribed by this act and Ark. Code Ann. §§ 27-57-208 (1987) and 26-57-802 (1987)," merely referring to the other tax as "equally proportionate."

But we do not find that to be the case. The ballot title states:

An initiated act of the state of Arkansas to provide for a surtax on cigarettes and all other retail tobacco products in addition to all existing taxes *in the amount of 12.5 mills per cigarette or 25¢* per pack and equally proportionate amounts on all other tobacco products.

■ Next, Petitioners assert the proposal unconstitutionally delegates the calculation of the tax on "other tobacco products"

to an agency of the executive branch. Petitioners have not cited authority rendering this delegation suspect. The agency to which the authority is passed is given no discretion to vary the rate, it merely performs the calculation.

■ Two other points involve Petitioners' claim that the ballot title fails to disclose that 3% of the tax proceeds would be allocated to the constitutional officers fund and the state central services fund and, second, fails to disclose that certain sales of tobacco products in border areas will not be subject to any Arkansas tobacco tax. Both of these allocations are mandated under existing law and not by way of provisions of the proposed act. We find no deficiency on this ground.

■ Next, Petitioners argue that the ballot title fails to disclose or summarize the effect of Section 11, which places the determination of the tax rate on "other tobacco products" on the Department of Finance and Administration. It is enough to say that the ballot title fairly discloses that the DF&A will determine the rate of tax on specified products and that is the extent of our scrutiny under Amendment 7. *Ferstl* v. *McCuen, supra.*

Lastly, Petitioners urge that certain sections of the measure are vague and the ballot title fails to reveal their full effect. Under the measure funds are allocated to "tobacco free" schools. They contend that school "premises" are not defined and, hence, the consequences of using or possessing tobacco on or near school campuses is unexplained; they cite the danger of individuals transporting their children to school, being subjected to a "personal search," and uncertainty as to the recovery of funds paid to a school which later violates the tobacco free standard.

■ Again, we do not see these particulars as critical to the ballot title. We have noted the difficulty of deriving a perfect ballot title. *Ferstl* v. *McCuen, supra.*

In conclusion, we are satisfied that the ballot title in this case provides an adequate basis for the electorate to make an informed decision as to whether to adopt or reject the proposed act. Accordingly, with respect to Count I we hold the petition to be without merit.

Petition denied in part.