2012 Ark. 370

**Bill WALMSLEY, Darrell Meyer, and Bill McDowell, individually and on behalf of the Arkansas Racing Alliance, Petitioners**

v.

**Mark MARTIN, Secretary of State, Respondent**

v.

**Nancy Todd, an individual, and Nancy Todd's Poker Palace and Entertainment Venues, LLC, Intervenors.**

No. 12–798.

Supreme Court of Arkansas.

Oct. 4, 2012.

Friday, Eldredge & Clark, LLP, Little Rock, by: Elizabeth Robben Murray and Robert S. Shafer, for petitioners.

The Asa Hutchinson Law Group, PLC, Rogers, by: Asa Hutchinson, for respondent.

Williams & Anderson PLC, by: Peter G. Kumpe, for intervenors.

JIM GUNTER, Justice.

Intervenors Nancy Todd and Nancy Todd's Poker Palace and Entertainment Venues, LLC (NTPPEV), are sponsors of a proposed constitutional amendment that would authorize them to own and operate casinos in four specified counties within the state.[1] Respondent Mark Martin is the Arkansas Secretary of State and certified intervenors' proposed amendment as Issue No. 3 for the November 6, 2012 general election. Petitioners Bill Walmsley, Darrell Meyer, and Bill McDowell are taxpayers, voters, and members of the Arkansas Racing Alliance, a ballot-question committee expressly organized to advocate for the defeat of two proposed constitutional amendments, one of which is intervenors'.

In this amendment 7 original action, petitioners complain that (1) the initiative petition submitted by intervenors on July 6, 2012, was facially insufficient and that respondent improperly gave intervenors an additional thirty days in which to file additional signatures; (2) respondent incorrectly certified that the petition contained 95,687 valid signatures on September 14, 2012; (3) respondent's August 23, 2012 certification of intervenors' revised ballot title to the county election commissioners was an ultra vires act; and (4) the revised ballot title is not fair and complete. Petitioners request that we appoint a special master, declare the initiative petition insufficient and the revised ballot title invalid, enjoin respondent from placing the proposed constitutional amendment on the November 6, 2012 general-election ballot, and order that any votes cast for or against the measure not be counted.

This court has jurisdiction to hear appeals pertaining to elections and election procedures and to hear suits attacking the validity of statewide petitions filed under amendment 7 to the Arkansas Constitution. Ark. Sup.Ct. R. 1–2(a)(4), 6–5(a). We hold that the certification of intervenors' revised ballot title was improper because that title was not attached to the petition circulated to, and signed by, the voters. Accordingly, we vacate respondent's certification of Issue No. 3 and order that any votes cast on such proposal not be counted or certified. We decline to issue advisory opinions as to whether the revised ballot title is legally sufficient or whether intervenors' petition contained the requisite number of valid signatures.

On March 7, 2012, NTPPEV submitted its proposed amendment to the attorney general for his approval and certification. On April 25, 2012, the attorney general certified the popular name and ballot title, and on April 27, 2012, at NTPPEV's request, the attorney general recertified them after a provision regarding the distribution of tax proceeds was added to the ballot title. Thereafter, intervenors began canvassing the state for signatures to their initiative petition.

On July 16, 2012, a voter and taxpayer, Chuck Lange,[2] challenged the legal sufficiency of the measure's ballot title by filing an administrative petition with respondent pursuant to Arkansas Code Annotated section 7–9–503 (Repl.2011).[3] In support of

---

**1.** The full text of the ballot title that was certified for the November 6, 2012 general election is attached as an addendum to this opinion.

**2.** Mr. Lange was granted intervention in the related case *Todd v. Martin*, No. 12–713. *See* 2012 Ark. 319, 2012 WL 3744971 (per curiam). Intervenors point out that Mr. Lange,

like petitioners here, is affiliated with racing interests and that his ballot-title challenge was primarily funded by Southland Racing Corporation.

**3.** This provision is codified within chapter 9, subchapter 5 of our election code, which statutes are often referred to as Act 877 in our

his administrative petition, Lange asserted that the proposed amendment violated section 2 of the Sherman Act and that its popular name and ballot title were misleading. On July 27, 2012, NTPPEV responded to Lange's administrative petition maintaining that the Sherman Act claim was hypothetical and premature and that the measure's popular name and ballot title were fair and complete.

On August 14, 2012, the attorney general issued a letter response to respondent's request for consultation in which he opined that the state's adoption of the proposed amendment would not be preempted by the Sherman Act but that the proposed amendment's implied repeal of the Electronic Games of Skill Act (EGSA) [4] should have been expressly stated in the ballot title. Therefore, the attorney general concluded that NTPPEV's ballot title was not fair and complete. Accordingly, on August 15, 2012, respondent issued an amended administrative declaration finding the measure legally insufficient for inclusion on the November 6, 2012 ballot.

In response to respondent's administrative declaration, NTPPEV submitted a revised ballot title which added a parenthetical provision stating that the measure "may repeal the Electronic Games of Skill Act, and thereby prohibit Oaklawn Racing and Southland Racing from continuing to operate electronic games of skill at their respective race tracks in Hot Springs and West Memphis." Respondent again consulted with the attorney general asking if the revised ballot title was sufficient, and if so, was NTPPEV required to obtain new signatures because the new ballot title was not circulated with the petition.

On August 21, 2012, the attorney general responded by letter and advised respondent that NTPPEV's revision did not fix the problem. The attorney general explained that the revision's use of the word "may" would "leave the voter wondering how the amendment affects" the EGSA. The attorney general did not address respondent's second question, finding it unnecessary in light of his answer to the first question. On August 22, 2012, respondent issued another administrative declaration finding that NTPPEV's proposed revision to the ballot title continued to be legally insufficient.

When respondent indicated that he would not certify the measure to the county election commissioners, intervenors brought, in this court, an original action against him seeking a writ of mandamus or an order of review.[5] In light of that filing, at 5:00 p.m. on August 23, 2012, respondent certified intervenors' proposed amendment to the county election commissioners as Issue No. 3.

Meanwhile, on July 6, 2012, intervenors filed their petition to initiate their proposed amendment with respondent.

election cases. *See* Act of Mar. 25, 1999, No. 877, 1999 Ark. Acts 3257.

**4.** The EGSA was enacted by the General Assembly in 2005 and is codified at Arkansas Code Annotated sections 23–113–101 to –604 (Repl.2002).

**5.** That case, number 12–713, was filed on August 23, 2012, and was styled a petition for review and for a writ of mandamus. In their petition for review, intervenors sought review under Act 877 of 1999 and asked this court to hold that their initiated amendment was legally sufficient. In their petition for a writ of mandamus, intervenors asked us to direct respondent to immediately certify the measure for the 2012 general election. When respondent subsequently certified the revised ballot title to the county election commissioners at the close of business on August 23, 2012, the petition for writ of mandamus was rendered moot and only the Act 877 petition for review remained. The parties' simultaneous briefs were filed on September 4, 2012, and oral argument was heard on September 13, 2012.

After his initial review, respondent determined that intervenors submitted 79,626 total signatures but that a number of those signatures were not valid. Accordingly, on July 23, 2012, respondent provided intervenors thirty additional days in which to solicit and obtain additional signatures. On August 22, 2012, intervenors submitted an additional 22,051 pages purportedly containing an additional 121,502 signatures. On September 14, 2012, respondent certified that intervenors' petition met the signature requirements of amendment 7.[6] This original action was filed on September 18, 2012, and we granted intervenors' motion to intervene on September 20, 2012. The case was simultaneously briefed on September 24, 2012.

Amendment 7 to the Arkansas Constitution, now codified at article 5, section 1, provides that "[t]he sufficiency of all state-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes." Although this case raises at least four separate issues, the primary question presented is whether a sponsor of an initiated amendment may attach one ballot title to her petition and then ask respondent to certify another. We hold that she may not.

Petitioners assert that the ballot title that intervenors circulated on their petition is not the same as the ballot title respondent certified to the county election commissioners as Issue No. 3. Petitioners argue that this substitution cannot be permitted because signatories to the petition are presumed to rely upon the ballot title when they sign the petition. Petitioners further contend that the added parenthetical obviously makes a difference to voters because the measure's effect on existing legal gaming and the associated streams of revenue would impact voters' decisions whether to vote "for" or "against" it.

For his part, respondent maintains that his certification was legally compelled because intervenors' mandamus and Act 877 review action was pending in this court seventy-five days before the election. *See* Ark.Code Ann. § 7–5–204(c)(1) (Repl.2011) (directing the secretary to transmit a proposed measure to the county election commissioners if he has not yet determined the sufficiency of a petition or if the measure has been challenged in a court of competent jurisdiction.) Respondent further submits that certification was also necessary to provide military and overseas absentee voters the opportunity to vote on the measure in the event that this court ruled that the proposed amendment should remain on the November 6, 2012 ballot. Nevertheless, respondent concedes that the revised ballot title was not attached to the petition circulated by intervenors.

Intervenors, on the other hand, assert that respondent's certification was proper

---

**6.** Respondent ultimately found that of the 200,746 total signatures submitted, 95,687 were valid, which was in excess of the required number of 78,133. We briefly note that respondent's certification is devoid of any reference to whether and how intervenors' petition satisfied amendment 7's geographic distribution requirement. In this court's recent decision in *Arkansas Hotels, Inc. v. Martin,* we explained that a valid initiated amendment petition must bear the signatures of *both* ten percent of the state's legal voters *and* five percent of the legal voters of at least fifteen counties. 2012 Ark. 335, at 9, 2012 WL 4128440. For these purposes, the number of "legal voters" is determined by reference to the number of votes cast in the most recent gubernatorial election. *See Sturdy v. Hall,* 201 Ark. 38, 41, 143 S.W.2d 547, 550 (1940). Curiously, however, respondent's certification refers only to statewide sufficiency and is silent as to the geographic distribution requirement.

because the revised ballot title was not materially different from the version circulated to, and signed by, the voters. In support of their position, intervenors stress that neither the popular name nor the text of the measure itself has changed. On this point, intervenors contend that their signatures are valid because every signatory received a full and correct copy of the proposed measure itself, which remains unchanged. As to the revised ballot title, intervenors assert that the parenthetical reference to the implied repeal of the EGSA was an immaterial revision added in favor of more disclosure to the voter in the voting booth as to the possible effects of the proposed amendment. Because the measure itself was unaltered, intervenors ask us to hold that their amendment was properly initiated. Intervenors further argue that the curative process set forth in amendment 7 and our election code vitiates petitioners' argument that a |₈sponsor cannot ask the voters to sign one thing and then ask the Secretary of State to certify another.

Our constitution and election code require the sponsor of an initiated amendment to provide potential signatories an opportunity to review the exact ballot title and complete measure. *See* Ark. Const. amend. 7 ("At the time of filing petitions the *exact title* to be used on the ballot shall by the petitioners be submitted with the petition. . . .") (emphasis added); Ark. Code Ann. § 7–9–106(a) (Repl.2011) ("To every petition for the initiative shall be attached a *full and correct copy of the title* and the measure proposed.") (emphasis added); *id.* § 7–9–104(a) (providing that a petition must bear the "title and full text of the measure proposed"). We have previously discussed the attachment mandate and have explained that its purpose is to inform voters of what they are signing before they sign it. *Kyzar v. City of W. Memphis,* 360 Ark. 454, 462, 201 S.W.3d 923, 929 (2005). Furthermore, we have held that strict compliance with the attachment mandate is required. *Id.* at 460, 201 S.W.3d at 928 (quoting *Townsend v. McDonald,* 184 Ark. 273, 42 S.W.2d 410 (1931) ("This is a right of great benefit to the voters, and we do not think the requirement should be regarded as merely directory, but that it is a substantial right which is of a mandatory character, and must be complied with or the proceeding will be void.")).

■ Our constitution reserves to the people the power to propose constitutional amendments and to approve those amendments in the voting booth. Ark. Const. amend. 7; *Sturdy v. Hall,* 201 Ark. 38, 42, 143 S.W.2d 547, 550 (1940) ("It appears, therefore, that a very small per cent. [sic] of our population may, at each general election, assemble the |₉electorate into both a general assembly and a constitutional convention."). The nature of this direct democracy is confirmed by the fact that amendment 7 is codified at article 5, section 1 of our constitution—the first section of the article entitled "Legislative Department." Furthermore, both the popular name and the ballot title are indispensable parts of the initiated amendment process. *See Washburn v. Hall,* 225 Ark. 868, 871, 286 S.W.2d 494, 497 (1956). We have explained that the purpose of the ballot title is to allow a voter to reach "an intelligent and informed decision for or against the proposal and to understand the consequences of his or her vote." *Roberts v. Priest,* 341 Ark. 813, 821, 20 S.W.3d 376, 380 (2000) (citing *Christian Civic Action Comm. v. McCuen,* 318 Ark. 241, 884 S.W.2d 605 (1994)).

If we were to accept intervenors' invitation and hold that only the text of the measure need be submitted to the voters during the canvassing process, manifest

injustice would result because voters would be forced to discern the nature of the proposed measures without any aid. We therefore confirm the basic principle that the ballot title is not an extraneous luxury, but is part and parcel of any valid initiative petition.

In support of their "immaterial alteration" argument, intervenors cite our decision in *Porter v. McCuen*, 310 Ark. 562, 839 S.W.2d 512 (1992). In *Porter*, a group of voters who opposed a proposed measure that would increase excise taxes on tobacco products brought an amendment 7 original action against the secretary of state alleging that the proposed act's ballot title was legally insufficient. *Id.* at 564, 839 S.W.2d at 514. The voters' primary grievance concerned the deletion of a segment of text from the proposed act prior to circulation and after the attorney general had inspected, revised, and approved the ballot title. *Id.* at 564–65, 839 S.W.2d at 514. The voters argued that the sponsor improperly submitted one version of the act to the attorney general for approval and then submitted a different version to the public. *Id.* at 566, 839 S.W.2d at 514. In rejecting this argument, we noted that the deleted text did not legislate or affect the proposed measure in any way. *Id.* We suggested, however, that if a material portion of text was added, removed, or modified, our holding might have been different. *Id.*

Clearly, *Porter* is not on point. In *Porter*, the sponsor altered the text of its measure prior to circulation. Here, intervenors altered the text of their ballot title after collecting tens of thousands of signatures. It is undisputed that intervenors chose to revise their ballot title to add a provision noting that their measure, if adopted,

might result in the implied repeal of the EGSA and thereby render illegal any casino-style gaming [7] offered at Oaklawn Park and Southland Park. While we sympathize with intervenors' view that the revision was ostensibly made as part of a collaboration with respondent and the attorney general, the fact remains that intervenors altered the text of their ballot title even though all of their signatures were gathered under a different ballot title.

Because intervenors' revised ballot title is clearly "something different" than their original ballot title, *see Townsend*, 184 Ark. at 277, 42 S.W.2d at 413, we hold that no signatures collected under the former title may support certification of the revised ballot title. Accordingly, we hereby vacate respondent's August 23, 2012 certification and order that any votes cast for or against the proposed amendment not be counted or certified.

We also briefly note that our holding does not announce a new "material alteration" rule. Instead, it merely reiterates that potential signatories to initiated amendments, referenda, and acts must receive the exact ballot title that will be certified and printed on the general-election ballot. In light of our conclusion, we need not address the sufficiency of the petition's signatures or the legal sufficiency of the revised ballot title. We further shorten the time for issuance of the mandate to five days and direct that any petition for rehearing must be filed within five days from the date that this opinion is issued.

Certification vacated; motion for appointment of a special master denied as moot, motion to supplement the record

---

**7.** The parties disagree whether Oaklawn and Southland operate "casino" games. For present purposes, however, "casino-style" games is intended to encompass the electronic gaming machines offered at those venues.

denied as moot, and motion to strike denied as moot.

## ADDENDUM

The following is the complete text of the popular name and revised ballot title certified by respondent on August 23, 2012, as Issue No. 3:

### Popular Name

AN AMENDMENT TO ALLOW NANCY TODD'S POKER PALACE AND ENTERTAINMENT VENUES, LLC TO OWN AND OPERATE FOUR CASINO GAMING ESTABLISHMENTS, ONE EACH IN PULASKI, MILLER, FRANKLIN AND CRITTENDEN COUNTIES

### Ballot Title

AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING FOUR CASINO GAMING ESTABLISHMENTS, TO BE OWNED AND OPERATED BY "NANCY TODD'S POKER PALACE AND ENTERTAINMENT VENUES, LLC" (A PRIVATE LIMITED LIABILITY COMPANY), ONE EACH TO BE LOCATED IN PULASKI, MILLER, FRANKLIN AND CRITTENDEN COUNTIES; PROHIBITING THE GENERAL ASSEMBLY AND ANY POLITICAL SUBDIVISION OF THE STATE FROM ENACTING ANY LEGISLATION, RULES OR REGULATIONS REGARDING CASINO GAMING; PROHIBITING CASINO GAMING AT ANY OTHER THAN THE LOCATIONS OPERATED BY NANCY TODD'S POKER PALACE AND ENTERTAINMENT VENUES, LLC; (SUCH PROHIBITION MAY REPEAL THE ELECTRONIC GAMES OF SKILL ACT, AND THEREBY PROHIBIT OAKLAWN RACING AND SOUTHLAND RACING FROM CONTINUING TO OPERATE ELECTRONIC GAMES OF SKILL AT THEIR RESPECTIVE RACE TRACKS IN HOT SPRINGS AND WEST MEMPHIS); PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PARTICIPATING IN CASINO GAMING; REQUIRING THAT THE NET GAMING REVENUE OF EACH CASINO SHALL BE SUBJECT TO THE TAXES LEVIED BY ALL OF THE TAXING JURISDICTIONS WHERE A CASINO IS LOCATED AT THE SAME RATE AS FOR BUSINESSES GENERALLY, WITH THE TAX TO BE PAID TO THE STATE'S GENERAL REVENUE FUND ACCOUNT OF THE STATE APPORTIONMENT FUND; DEFINING "NET GAMING REVENUE" AS TOTAL ANNUAL GAMING REVENUES, INCLUDING COMPENSATION FOR CONDUCTING ANY GAME IN WHICH NANCY TODD'S POKER PALACE AND ENTERTAINMENT VENUES, LLC IS NOT A PARTY TO THE WAGER, MINUS AMOUNTS PAID TO COVER THE WINNINGS OF PATRONS; FURTHER REQUIRING THAT THE NET GAMING REVENUE OF EACH CASINO BE SUBJECT TO AN ADDITIONAL TAX AT THE RATE OF TWELVE AND ONE–HALF PERCENT (12.5%); MANDATING THAT THE PROCEEDS OF THIS ADDITIONAL TAX SHALL NOT BE SUBJECT TO APPROPRIATION BY THE GENERAL ASSEMBLY AND DECLARING SUCH PROCEEDS TO BE CASH FUNDS HELD SEPARATE AND APART FROM THE STATE TREASURY WITH THE ADDITIONAL PROCEEDS DISTRIBUTED: (I) THIRTY PERCENT (30%) TO FUND PUBLIC SCHOOLS IN ARKANSAS; (II) TEN PERCENT (10%) TO THE ARKANSAS DEPARTMENT OF VETERAN AFFAIRS; (III) EIGHT PERCENT (8%) TO THE ARKANSAS CHIL-

DREN'S HOSPITAL; (IV) EIGHT PERCENT (8%) TO THE MEDICAID PROGRAM TRUST FUND; (V) EIGHT PERCENT (8%) TO A SENIOR CARE PRESCRIPTION DRUG BENEFIT PROGRAM; (VI) SIX PERCENT (6%) TO THE REGISTERED ARKANSAS STATE APPRENTICESHIP PROGRAMS GOVERNED BY THE ARKANSAS APPRENTICESHIP COORDINATION STEERING COMMITTEE; (VII) TWELVE PERCENT (12%) TO THE COUNTY IN WHICH A CASINO OPERATES, BASED ON NET GAMING REVENUE FROM OPERATIONS IN THAT COUNTY; AND (VIII) EIGHTEEN PERCENT (18%) TO ALL COUNTIES WITH NO CASINO GAMING, BASED ON THEIR POPULATION ACCORDING TO THE MOST RECENT CENSUS; PROHIBITING ANY OTHER STATE OR LOCAL TAXES, FEES OR ASSESSMENTS OF ANY NATURE ON NANCY TODD'S POKER PALACE AND ENTERTAINMENT VENUES, LLC, INCLUDING ON ITS FURNITURE, FIXTURES, EQUIPMENT, PROPERTY, BUSINESS OPERATIONS, GROSS REVENUES, NET GAMING REVENUES, OR INCOME DERIVED FROM OR USED IN CASINO GAMING EXCEPT AS LEVIED AGAINST BUSINESSES GENERALLY; ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; ALLOWING THE SELLING OR FREE FURNISHING OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE BUT OTHERWISE REQUIRING ADHERENCE TO ALL ALCOHOLIC BEVERAGE CONTROL BOARD REGULATIONS; PERMITTING THE SHIPMENT INTO AUTHORIZED COUNTIES OF GAMBLING DEVICES DULY REGISTERED, RECORDED AND LABELED PURSUANT TO FEDERAL LAW; RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THIS AMENDMENT BUT NOT OTHERWISE REPEALING, SUPERSEDING, AMENDING OR OTHERWISE AFFECTING AMENDMENTS 84 (BINGO) AND 87 (STATEWIDE LOTTERY) TO THE ARKANSAS CONSTITUTION.